Opinion of the court delivered by
Judge Whyte.
The bill charges, that on or about the 20th March, 1823, or soon afterwards, the complainánt, Henry D. Johnson, betted a tract of land of four hundred acres with Joseph Cooper, one of the defendants, at a game of cards called seven up, or all-fours, at the value or price of twelve tons of bar iron. That one Crockett, who played for plaintiff!, acted villainously, and by the fraud of said Crockett and Cooper, the complainant was made to lose the land; that supposing the playing to be fair, he was induced thereby to convey said land to said Cooper; but that he soon thereafter discovered they, to wit, Cooper and , Crockett, acted fraudulently. Complainant further charges, that he received no other consideration for said land, except the gaming consideration before mentioned, and $¡5, which said Cooper had inserted in the deed, and which he said he made a present of to complainant, with the view to give it the colorable appearance of a legal transaction. Cooper was at the time indebted to plaintiff on his books, and complainant gave him,credit for the $>5. The bill further charges, that Cooper has conveyed the said land to the other defendant, Crosswhite, who purchased the same with a full knowledge of all the foregoing transactions, has cut down timber thereon, and is claiming it as his own. The hill further charges, that said conveyance to Cooper is void at law, but nevertheless embarrasses his title to the land, and by lapse of time he may lose the evidence of its invalidity, and there *525 by be deprived of his land, and therefore prays that the said conveyance made by him to defendant Cooper, may. be declared void, and the title to said land decreed to him the plaintiff, and such other and such further relief as the premises and justice may require, &c.
The answer of Crosswhite denies the villainy and corrupt dealing of Cooper and Crockett, either from his own knowledge or information communicated to him before the purchase and conveyance of the land, which he admits to have been made on the 23d October, 1823, and was proved and recorded: that as a consideration for said tract of land, he gave Cooper one hundred dollars in cash, and eight tons of iron, amounting to $1000, four tons of which, with the $100 in cash, was paid when the several obligations became due; the remaining four tons being undue, said Cooper has transferred the obligations of this defendant, and he has been notified of the transfer. Answer further slates, that defendant had wished to purchase the land from Johnson, the plaintiff when it was his, who asked for it $1200. This defendant refused to give that sum. This defendant hearing nothing alleged against the fairness of Cooper’s purchase, and without any other motive than that of obtaining for a fair price, a tract of land he had been desirous before of purchasing, contracted with said Cooper, and not with the knowledge of the unfairness ascribed to the transaction by plaintiff. That he innocently and ignorantly purchased said land, and if improper means were used by Cooper to obtain it, he knew nothing of it. Answer further states, that defendant is innocent in the transactions between plaintiff, Cooper, and Crockett, and heard nothing thereof until after he had parted with his money and property, and submits to the court on whom the loss should fall; whether on the plaintiff, who assumed the character of a gambler and lost his property, or on this defendant, who knew nothing thereof.
The amended answer of Crosswhite states, in addition to his former answer, which he adopts, that he believes, after the rise of the court in Elizabeth ton, where it is *526 alleged the gaming took place, respondent did hear a flying report that the plaintiff had been unfortunate in gaming, but if he heard with whom, he had forgotten-, that afterwards, when defendant Cooper applied to him to purchase, he inquired of him how he had obtained the land from plaintiff; he answered, by fair purchase for cash; with which answer this defendant was satisfied, and bargained for the land, and agreed to pay the consideration expressed in his first answer, without knowledge of fraud or gaming.
The answer of Cooper admits the conveyance from plaintiff to himself, and a sale for a full consideration to-the other defendant, as is set forth in his answer; denies that he won the same at a game of cards, hut says he will truly state the whole transaction, viz: that he and plaintiff for a considerable time previous to the transaction, had been in the habit of gaming together at different times and different places; that on all occasions when plaintiff won of him, he paid him up as he would have done any other consideration, and thus plaintiff received from the defendant considerable amounts? sometimes as much as $200 or $300, under which proceedings and other transactions, plaintiff became finally a debtor to this defendant, and had offered to sell him this tract of land; and this defendant was induced to make him an offer, and did offer said plaintiff twelve tons bar iron and $5, which was accepted, and a deed executed in the presence of witnesses. This defendant calculated to pay the iron part of the consideration in notes on said plaintiff, which had been won from him, but which would not have been the fact, had not the defendant on previous occasions paid his losings. This defendant further slates, that having obtained this tract of land, not by cards as stated, but by purchase, called upon the other defendant and proposed selling to him, which he did without any communication of the gaming, <fcc.
This is the substance of the bill and answers, The defendant, Cooper, admits in his answer the gaming transactions, and that the consideration for the land, the nominal *527 12 tons of bar iron, was paid in notes of the plaintiff, won ,5. , „ , „ . , from him by gaming. The defendant Crosswhite, denies notice of the gaming transaction, at least he affects to do so in his answers; and let it be taken as a complete denial of notice the notice, if necessary, is sufficiently established by the testimony of the witnesses, Smith, Moorely, and others.
The relief prayed by the bill, is resisted on argument by the defendant’s counsel, on the following grounds. First, because the transaction on which the bill is brought, is a gaming transaction, and the plaintiff’s suit will not be entertained in a court of equity, on the principle that he is a party to the transaction, or a particeps criminis. Secondly, that the plaintiff’s remedy is at law, and not in equity. Thirdly, that if the plaintiff ever had a right to come into a court of equity, he is too late in doing so by the present bill; for by the provisions of the act of assembly, 3.799, ch. 8, sec. 4, such right is to be asserted by suit within ninety days after it has accrued.
As to the first objection interposed to the relief prayed by this bill, that the transaction on which it is bottomed is a gaming transaction, and therefore the bill is not sustainable in equity, because the plaintiff is a party to the transaction, or according to the language of the books particeps criminis; and in support of which, 1 Mad. Chan. 242, is cited, as an authority to prove it, (and it is to be remembered it is the only authority cited;) it is in these words: “in case of money bet at gaming and paid, the court, it seems, would not grant relief, the party in equity being particeps criminis.'
Maddox cites the case of Bosanquet vs. Dashwood, Forrester’s Reports, a book we have not had access to, and therefore, from the short notice of it in Maddox above stated, we cannot with precision ascertain its extent or authority. Mr. Maddox in his citation states it in this language, it seems, an expression not absolute, but importing doubt and uncertainty; and when we refer to the previous citations by him in the same place, notes (W.) and (X.) we may venture to say, perhaps, that the *528 principal point in Bosanq uet and Dashwood, was a ques-lion arising upon an usurious transaction, and tbe ques-i¡on 0p gamjng; a collateral matter, incidentally noticed Qjp j]iustration in giving judgment, as is imported by the expression,# seems. But be this as it may: let it be considered a decision, and let us examine its authority, and how far it is to be respected as to its operation on the present case before the court. Before .doing so, it may be proper to notice, that the objection of particéps criminis, is not confined as was said on the argument, to a transaction which in the common acceptation of the* term, means an act that may be visited by an indictment, or other criminal prosecution; but applies to other transactions contrary to good morals, whether they be. immoral per se¡ or prohibited by statute under- a penalty, or by a simple prohibition, or as militating against the policy of a statute, or fraud, or other corrupt contract. In all these cases, the disfavour of courts of equity is manifested not only to the person, but also to the transaction, and in degree much more to the latter than to the former; so much so, that it will give relief against the latter, although the actor in the transaction, or the particeps, may be benefited thereby. This is the rule upon the subject, which the current of reported cases establishes, a few of which will be noticed, out of the numerous many, that might be cited.
The first case that I shall notice is Gilbert vs. Chud-leigh, decided the I8th July 1742, because it is taken from the same reporter that the above case of Bosanquet vs. Dashwood, (the case produced by the counsel for the defendants,) is taken, viz. Forrester’s Reports, which being contemporary in some measure, though perhaps later in date, will the better enable us to make a correct estimate of the short note taken from Bosanquet and Dash-wood.
This citation is from 2d Hovenden’s supplement to Ves. Jr. Reports 122, and is as follows: “In delivering his judgment in Gilbert vs. Chudleigh, Lord Hardwick, as appears from Mr. Forrester’s M. S. expressed himself as *529 follows: “It was urged for the defendant, that this is a bill ’ brought by one of the parties to this corrupt contract against the representative of the other, who is a stranger to it, and that although an execution creditor might have claim to relief for the sake of providing assets, yet the court will show no favour to either of the parties themselves. But the truth is, (says his lordship) that in these cases of violations of public policy, it is indifferent who stands before the court, if the intention of the contract be evident, because the court does not regard the state and condition of the parties so much as the nature of the contract and the public good.” This judgment of Lord Hardwicke, meets the very objection taken by the defendants’ counsel in the present case. It was a transaction against the policy of a statute, where it was urged that the plaintiff was one of the parties to the corrupt agreement, or contract, as negativing the relief prayed. His Lordship adjudged, that in violation of public policy it is indifferent who stands before the court; the court regards not the state and condition of the parties, so much as the nature of the contract, and the public good. There is no difference in principle, between the case of Gilbert and Chudleigh, and the present case. The act of 1799, ch. 8, is a public law; its policy is to put down all manner of gaming; for this purpose it makes void every contract to pay or deliver money, or other thing won or obtained by playing cards, or any species of gaming whatever; or wagering, or betting upon either of the parties, and that every conveyance of land, &c. sold &c. to satisfy or secure money so won, shall be void. The contract in the bill, and confessed in the answer, is within this statute, contravening its express and declared policy, and requires no illustration by repeating and making an application. This court is not to regard who stands before it, in opposition to carrying the statute into effect, and executing its policy by declaring the transaction, or contract set forth ip the pleadings and proofs, void, and placing the parties in statu quo; and Lord Thurlow, in the year 1782, in delivering his judgment in the case of Neville *530 vs. Wilkinson, (1 Bro. C. C. appendix, tbe note of which was taken and furnished by Mr. Scott, now Lord Eldon, then at the bar,) makes this observation: “that if C0U1qg 0f justice mean to prevent the perpetration of crimes, it must be, not by allowing a man who has got possession, to remain in possession, but by putting the parties back to the state in which they were before.” (18 Ves. 382;) see also 2d Hovenden 423, which states, that when a transaction contravening public policy has taken place, relief may be given to a particeps criminis; and cites Dashwood vs. Paryton, (18 Ves. 27. In 2d Hovenden 398, it is also laid down, that “relief may be given in certain cases to' a particeps criminis; but then such relief will always be in aid, not in subversion of public policy; the court interferes for the sake, not of the party, but of the public: cites case of Lord St. John vs. Lady St. John, (11 Ves. 536;) and again, in 2d Hovenden 122, it is laid down, “when a transaction contravening public policy has taken place, relief may be given at the suit of a particeps criminisand many cases are there cited. I therefore conclude on this part of the case, that the authorities sufficiently establish the principle, that the being a particeps, criminis, is not an available objection against him, who asks relief against the eifect of a contract made in contravention of the policy of a public statute.
The second objection taken by the defendants’ counsel to the relief prayed by the plaintiff’s bill, is, that the plaintiff’s remedy is at law, and notin equity. This objection is predicated on the' ground, that the gaming transaction or contract being void, and the deed given by the plaintiff Johnson, to the defendant Cooper, a nullity, the plaintiff is still seized of the estate and interest in the land described in that deed, in the same manner and to the same extent, as before its existence, and therefore may bring an ejectment. To this it is answered, that upon the naked position, that the deed of Johnson to Cooper is a void deed, the plaintiff has a right to come into equity, and have the void deed delivered up *531 as being a cloud upon his title. This is the acknowledged doctrine of courts of equity at the present day, and has been so held for many years. It was the doctrine held by Lord Hardwicke in Gilbert vs. Chudleigh, though afterwards Lord Thurlow held, that a bill for the delivery of a deed cannot be sustained, when such deed was void at law; and in this he was followed by Lord Rosábyn; but since then, the doctrine of Lord Hardwicke has prevailed, and during a course of many years has been repeatedly acted upon, and it has been held, that theexercise of this equitable jurisdiction seems to be more especially called for, when the legal invalidity of the instrument is not apparent on the face thereof, but requires evidence aliunde, as in the present case of the deed to Cooper, being fair on its face and in common form, showing nothing of the gaming transaction. (See 1 Hovendon, 17, and the cases there cited;) also, the same book, 421, where it is laid down, “that it may be a very salutary exercise of equitable jurisdiction, to order deeds to be delivered up, which, though void at law, may throw a cloud over a party’s right, or involve him in litigation; and that the interference of equity will be more especially proper, when the legal invalidity of the instrument is not apparent on the face thereof.” See the cases there cited.
These authorities show that the plaintiff Johnson, had in the present case an indisputable right to come into equity, to have the deed made by him to Cooper delivered up and cancelled, or a relief equivalent thereto. It results that the plaintiff Johnson, being now in equity by means of an equitable right, the redress for which a court of law could not give him a remedy, the court of equity will not send him to law to seek redress for a part of his case, which is not connected with the equitable part, but will decide the whole matter before them, upon the principle of lessening litigation. This course is supported by 1 Hovenden 216, where it is laid down, that “though the invalidity of an impeached instrument might be the subject of an action, it is discretionary in *532 the court of chancery, whether an issue on an action shall he directed or permitted; if the facts and the law are indisputably clear, it is within the jurisdiction of the court £0 act? not on]y without sending the parties to law, hut without allowing them to go there.” Several cases are cited which give references to others.
The third objection against the relief prayed by the bill is, that it was not brought within the time prescribed by the limitation of the 4th section of the 8th chapter of the act of 1799.
It is admitted that the 4th section amounts to a statute of limitations to the actions given by it-and brought, under it, although it wants that strength of expression which the general act of limitations of 1715 possesses. That act, when it gives the right to bring actions within a certain number of years or months, adds the negative, and not afterwards.” This negative clause is not used in expressing the limitation of bringing suits within 3 months under it; however it will be taken as a competent act of limitation, and there are two answers to it, either of which meets it fully, and shews its inefficiency in this case for the purpose relied on. The first answer is easily given, and plainly apparent on the face of the act, and is this, that the plaintifi’s case is not within the act, either in its letter or spirit. The second answer is, that if the plaintiff’s case was embraced by the act, the defendants have not availed themselves of the advantage by pleading it or relying upon it in the answer, pursuant to the practice of courts of equity.
As to the first answer, the limitation of bringing the action given by it to the loosing party in a gaming transaction, is given to an action at law, brought to recover some specific thing lost and delivered at the time, and not to a suit in equity, to declare void a conveyance of land. The action given by the provision of this section is debt or case, which are peculiarly confined to a court of law, and not within the jurisdiction of equity. This is further apparent to be the intention of the legislature, by expressing the subject matter of the action to be brought, *533 to wit: money or goods so lost and delivered, the proper subjects of legal cognizance in actions in the courts of law. Now, land lost at gaming and conveyed by the loser to the winner by deed, cannot by any latitude of construction, be possibly tortured into a signification to mean and express money or goods lost and delivered. But it is evident that cases of the nature of the present are not within the spirit of the act; they would not be within the intention of the legislature, as the necessary and proper relief upon this transaction is out of the pale of proceedings at law, and beyond the powers and jurisdiction of courts of law. Neither can it be admitted, that ip this instance of gaming alone, the legislature intended to confer on courts of law equitable jurisdiction, with the powers incident to such jurisdiction, when there was no necessity, other courts for the same purpose being already established and existing. The assumption would be perfectly gratuitous, that the legislature had any such intention.
The second answer is, that if the plaintiff’s case was embraced by the act, the defendants have not availed themselves of the advantage pursuant to the practice of equity proceedings.
It need only be observed on this point, that the constant practice and rule of proceedings in courts of equity is this, that the statute of limitations must be either pleaded, or the benefit of it insisted upon in the answer, otherwise the defendant cannot take the advantage of it. This practice is founded on the rule of the common law, “quisquís jurí pro se introducto renuncíate Every one may renounce the benefit of a law introduced in his favor.
We are of opinion therefore, that the judgment and decree of the circuit court of chancery be reversed, and a decree be drawn agreeably to the law as held in this opinion.
Decree reversed.(a)

 Vide, on the last point, Rawdon vs. Shadwell, (Ambler’s Rep. 269;) Turner vs. Warren, (2 Strange’s Rep. 1079.