THE RECTOR, CHURCHWARDENS AND VESTRYMEN OF ST. STEPHEN'S PROTESTANT EPISCOPAL CHURCH OF THE CITY OF NEW YORK, Respondent, *v.* THE RECTOR, CHURCHWARDENS AND VESTRYMEN OF THE CHURCH OF THE TRANSFIGURATION IN THE CITY OF NEW YORK, Appellant.

Real property — equity — when court of equity has jurisdiction to perfect title to real estate, or remove a cloud upon title — evidence — determination of claim to real property.

As applied to titles to real estate, and removing obstacles therefrom, it is the ordinary jurisdiction of a court of equity to perfect and complete the means by which the title, right, estate or interest of parties may be proved or secured, or to remove obstacles which hinder its enjoyment.

Where it is apparent that a cloud exists upon title, valid upon the face of the record, which is invalid or unenforceable through want of consideration or otherwise, and the invalidity or want of consideration can only be shown by oral testimony *dehors* the record, which evidence may be lost by the death of witnesses, a court of equity will entertain jurisdiction.

A sale of church property was made by this defendant, a religious corporation, by order of the court to an individual upon the understanding that the property was to be by him conveyed to this plaintiff, another religious corporation. The grantor, by its rector and clerk, executed a conveyance containing the following restriction : " And the said party of the second part, for himself, his heirs and assigns, doth covenant and agree to and with the said party of the first part, its successors and assigns, that the party of the second part, his heirs and assigns, shall not

1

at any time hereafter occupy or use said premises or any part thereof hereby conveyed, or permit the same to be occupied or used for any purpose other than church purposes only. And it is expressly understood that the said covenant shall attach to and run with the land." This clause was inserted in the deed by the officers who executed it without any direction or authority from the defendant. There is no mention of such a proposed restriction in the resolution authorizing the sale adopted by the vestry of the defendant, or in the petition presented to the Supreme Court stating the proposed terms of sale and asking the leave of the court to carry it out, nor is any such restriction contained in the purchase-money mortgage taken back by the defendant. *Held,* that the defendant corporation, in the absence of a provision that the premises should revert to the defendant in case of breach, has, in equity, no pecuniary interest remaining in the premises upon which it could base an action for damages in case of its breach or to maintain an action for an injunction to prevent the same.

While the covenant, as it appears in the deed, is valid upon its face, the fact that it was inserted without a pecuniary consideration and without the knowledge and authority of the vestry, or of the plaintiff's officers who are deemed to be the equitable purchasers, can only be shown *dehors* the record by the oral testimony of witnesses then living, and since the restrictive covenant is a cloud upon the title, a court of equity has power to grant relief.

The provisions of section 1638 *et seq.* of the Code of Civil Procedure, relative to an action to compel the determination of a claim to real property, cover also the questions here presented, since the restrictive covenant appears of record in the deed in question.

*St. Stephen's Church* v. *Church of Transfiguration,* 137 App. Div. 945, modified.

(Argued November 29, 1910; decided February 7, 1911.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 25, 1910, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles Blandy, Charles T. B. Rowe* and *Frederick A. Card* for appellant. The restrictive covenant cannot be said to be unenforceable. (*Anthony* v. *Harrison,* 14 Hun, 198; 74 N. Y. 613; *Justice* v. *Lang,* 42 N. Y. 493; *Madan* v.

*Sherard,* 73 N. Y. 329; *Schoonmaker* v. *Hoyt,* 148 N. Y. 425; *Ebaugh* v. *German Reformed Church,* 3 E. D. Smith, 60; *M. A. B. Church* v. *Bapt. Church,* 46 N. Y. 131; *Storm* v. *United States,* 44 U. S. 76; *Edwards* v. *Kearzey,* 96 U. S. 595; *Webb* v. *Buckelew,* 82 N. Y. 555; *Demarest* v. *Darg,* 32 N. Y. 281.) The restrictive covenant was not a cloud on the title and the judgment directing its cancellation and release cannot be sustained upon such a theory. (*Washburn* v. *Burnham,* 63 N. Y. 132, 134; *Nichols* v. *Voorhies,* 6 Hun, 307; *Marsh* v. *City of Brooklyn,* 59 N. Y. 280; *Moores* v. *Townshend,* 102 N. Y. 387; *Mellen* v. *Mellen,* 139 N. Y. 210; *Bailey* v. *Briggs,* 56 N. Y. 407; *Town of Venice* v. *Woodruff,* 62 N. Y. 462; *Bruner* v. *Meigs,* 64 N. Y. 506; *K. I. Co.* v. *F. S. S. R. R. Co.,* 85 N. Y. 530; 176 N. Y. 408.)

*Alton B. Parker* and *Arthur O. Townsend* for respondent. The Supreme Court had ample power to grant the relief which is directed by its judgment herein. (N. Y. Const. art. 6, § 1; *Sharon* v. *Tucker,* 144 U. S. 533; *Brown* v. *Doherty,* 185 N. Y. 383; *Seneca Nation* v. *Appleby,* 196 N. Y. 318; *Matter of Knowack,* 158 N. Y. 482; *Mitchell* v. *Einstein,* 42 Misc. Rep. 358; 6 Pom. Eq. Juris. §§ 735, 736, 1397; *Loring* v. *Hildreth,* 170 Mass. 328; *Holland* v. *Challen,* 110 U. S. 15.) The restrictive covenant was invalid and non-enforceable. (*Wheaton* v. *Gates,* 18 N. Y. 395; *Robertson* v. *Bullions,* 11 N. Y. 243; *Wyatt* v. *Benson,* 23 Barb. 327; 66 N. Y. 654; *Matter of Rector of St. Thomas,* 4 Abb. [N. C.] 51; *Watkins* v. *Willcox,* 4 Hun, 220; 66 N. Y. 654; *E. L. A. Society* v. *Brennan,* 148 N. Y. 661; *Korner* v. *Campbell,* 192 N. Y. 490; *Los Angeles University* v. *Swart,* 107 Fed. Rep. 798.) An action for equitable relief in the nature of bill of *quia timet* is maintainable upon the facts of this case. (6 Pom. Eq. Rem. § 744; *Beach* v. *Cook,* 28 N. Y. 508; *Hamilton* v. *Cummings,* 1 Johns. Ch. 517; *Field* v. *Holbrook,* 6 Duer, 597; *McHenry* v. *Hazard,* 45 N. Y. 580; *Crooke* v. *Andrews,* 40 N. Y. 547; *Lyon* v. *Alley,* 130

U. S. 177; *Martin* v. *Hewitt*, 44 Ala. 418; *Dart* v. *Orme*, 41 Ga. 376; *Ames* v. *Sankey*, 128 Ill. 523; *Holland* v. *Baltimore*, 11 Md. 186; *Phelps* v. *Harris*, 51 Miss. 789.)

Haight, J.    This action was brought to cancel and remove a cloud upon the title to the plaintiff's premises, in the nature of a restrictive covenant, or for a reformation of the deed conveying the premises and the satisfaction of a mortgage thereon.

The trial court found against the plaintiff, in so far as it demanded a satisfaction of the mortgage, and inasmuch as that branch of the case is not brought up for review it requires no further attention.

It appears from the findings of the trial court that the plaintiff and defendant were religious corporations of the same denomination and communion, located in the city of New York; and that prior to 1897 the defendant, whose main church edifice was in 29th street, owned the premises described in the complaint, in West 69th street, on which stood a small building maintained by the defendant as a chapel. · During the spring of that year negotiations appear to have taken place between the defendant and the plaintiff, whose church was then located in West 46th street, with reference to the purchase of the premises in question, at the price of $85,000.    It further appears that under the canon law of the Protestant Episcopal Church, the approval of the diocesan authorities to the re-location of a church was required, and some time elapsed before such authority could be obtained by the plaintiff.    Consequently one George W. Quintard took the title of the premises in his own name, paying therefor the sum of $35,000 in cash, and giving a purchase-money mortgage upon the property to secure his personal bond for $50,000, and thereafter held the property for the purpose of conveying it to the plaintiff when the diocesan consent to a re-location should be obtained.    He expended in the repair of the chapel the sum of $6,000, entered into a written agreement with the plaintiff whereby

the latter was to be entitled to purchase the property at the price paid by him therefor, and in the meantime to have the use and occupancy thereof. The plaintiff thereupon entered into the possession of the premises, expended a further sum of $8,000 for repairs, and so continued to occupy the same until July, 1900, at which time Quintard conveyed the premises to the plaintiff.

In order to make the sale to Quintard, it became necessary under the statute for the defendant to procure leave from the Supreme Court. Accordingly there was held a meeting of the vestry of the church, at the call of the rector, which resulted in the appointment of a committee of three to nego- tiate and consummate a sale, for a sum not less than $85,000, of the property in 69th street; and if such sale should be con- summated, the rector and clerk were authorized to sign such papers, contracts and deeds therefor as may be necessary. Thereupon a petition was presented to the Supreme Court setting forth the fact that the sale had been authorized by the vestry of the church, and that the committee appointed had agreed with Quintard to sell the same, in which it was stated that the amount agreed upon, of $85,000, was the fair market value of the property, and that the terms were $35,000 cash and the remainder secured by a mortgage of $50,000. Upon the presentation of such petition, an order was made granting the prayer of the petition and authorizing the sale. A deed was then executed by the rector and clerk of the defendant on the 27th day of May, 1897, and delivered to Quintard, which contained the following clause: "And the said party of the second part for himself, his heirs and assigns, doth covenant and agree to and with the said party of the first part, its successors and assigns, that the party of the second part, his heirs and assigns, shall not at any time hereafter occupy or use said premises or any part thereof hereby conveyed, or permit the same to be occupied or used for any purpose other than church purposes only. And it is expressly understood that the said covenant shall attach to and run with the land." It is further found

as a fact that this clause was inserted in the deed by the officers who executed it without any direction or authority from the defendant. There is no mention of such a proposed restriction in the resolution authorizing the sale adopted by the vestry of the defendant, or in the petition presented to the Supreme Court stating the proposed terms of sale and asking the leave of the court to carry it out, nor is any such restriction contained in the purchase-money mortgage taken back by the defendant. When Quintard tendered his deed to the plaintiff it contained a similar restriction; and then, for the first time, the officers of the plaintiff learned that Quintard's title was incumbered by such a covenant, and at first demurred to accepting it, but finally accepted it, he subsequently releasing the plaintiff from the restrictions so far as he had power to do so.

The trial court has further found as facts that the neighborhood in which plaintiff's church is situated had greatly increased in population, and the attendance at the church has steadily increased, so that after putting in all the additional sittings possible, plaintiff finds itself hampered in carrying out its church work for lack of accommodation and it desires to increase the size of its edifice. To do this it must borrow money. The property has increased in value since its purchase from the defendant in 1897, and plaintiff is now assured that it can borrow upon the property at a less rate of interest than it is now paying the defendant, enough money to pay off defendant's mortgage of $50,000, as well as to erect the needed additions to and enlargement of the church edifice, provided it can be relieved of the restrictive covenant above quoted. But so long as that covenant stands as an apparent burden upon the title a new loan practically cannot be negotiated, for the restricted use to which the property is apparently subjected destroys its market value. Defendant owns no property on West 69th street or elsewhere in the vicinity of the premises described in the amended complaint, and has no property or interest which could be beneficially affected by the maintenance or enforcement of the restrictive cove-

nant.   The restrictive covenant in the deed casts a cloud upon plaintiff's title to the real estate.   The removal or release would leave plaintiff in the same position as to selling its property that practically every other church in the city of New York is in; that is to say, no sale or mortgage can be made without the consent of the church authorities and the Supreme Court.   As conclusions of law the court found that: "The restrictive covenant contained in the deed by defendant to said Quintard, while valid upon its face, is not enforceable by defendant at law or in equity; defendant having no such legal interest in the preservation of said restriction that it could prove any damages if the same were violated or restrain such violation by injunction."   The court then directed a judgment in favor of the plaintiff and against the defendant, the details of which it is not necessary to here consider, as but one objection was made with reference thereto and that was removed by the oral stipulation of the attorneys upon the argument.

The first question that arises is as to whether the defendant has any present interest in the preservation of the restrictive covenant, the contention being on behalf of the defendant that it sold the premises for a less sum than its true value, and that the difference between the amount that it received and the value of the premises was the consideration paid for the insertion of the covenant.   This became the chief question of fact litigated upon the trial, and the finding of the court is against the defendant upon the question.   There was evidence submitted on behalf of the plaintiff that supports the finding.   The expert witness gave evidence tending to show that the value of the premises did not exceed the purchase price and was even less than the amount paid.   The petition that the defendant's officers presented to the Supreme Court for the purpose of obtaining leave to sell, alleged that the amount offered, $85,000, was the "fair market value of the property."   While the Appellate Division had the power to review and weigh the evidence upon this subject, we are concluded by the findings, if they are supported by the evidence.   In this case, as we have seen, there is evidence which

supports the finding, and we must, therefore, treat the case accordingly.

It is further contended that in view of the fact that the defendant had used this property for religious purposes, it had an interest in so continuing its use. It may be that this was the moving cause that induced the rector to have the covenant inserted in the deed and in the preliminary contract·that preceded it. But it is not apparent how a sentiment of this character would induce him to open the door to the use of the property to all kinds of religious doctrines and beliefs, even those antagonistic to that of his own church. It is more probable that he had in mind the fact, that he was conveying the premises to an individual who would receive the same for the purpose of subsequently conveying them to the plaintiff corporation, a sister church of the same denomination, and that he wished to prevent the individual from subsequently changing his mind and diverting the property to commercial purposes. However that may be, the fact remains that the premises were conveyed by the individual to the plaintiff, who ever since has used the same for church purposes, promulgating the doctrines and carrying on the work of the defendant's church. It is said Quintard contracted with the defendant for the purchase of the property in full contemplation of the restriction and with full understanding of its legal effect, and that the plaintiff accepted the conveyance from Quintard with like full understanding and legal effect. This is but the legal conclusion which follows from the fact that they accepted the deeds. As to Quintard, we have not the benefit of his testimony upon the subject. He is said to have been an aged man. He was merely acting as the conduit through which the title passed from the defendant to the plaintiff. The negotiations had taken place between the plaintiff and defendant. He took the title and held it for the benefit of the plaintiff until it was enabled to take the title and pay him the amount that he had advanced therefor. When his deed was tendered to the plaintiff its officers objected to it on the ground that it con-

tained the restrictive convenant; but owing to the fact that he had taken the title at their request, with the understanding that it should be conveyed to them and had advanced large sums of money thereon, they finally concluded, under the circumstances, that it was their duty to accept the same. We consequently have the conveyance made by the rector and clerk, they causing to be inserted in the deed the restrictive clause in question, without the knowledge, authority or direction of the vestry, the court or the plaintiff. Such being the situation, it is apparent that the defendant corporation, in the absence of a provision that the premises should revert to the defendant in case of breach, in equity has no pecuniary interest remaining in the premises upon which it could base an action for damages in case of its breach, or to maintain an action for an injunction to prevent the same.

The question remaining is as to whether a court of equity has the power to grant relief under the circumstances of this case. As we have seen, it has been found as a fact that the restrictive covenant is a cloud upon the title. It seriously diminishes the value of the property and prevents the plaintiff from borrowing money upon it as security for the purpose of enlarging its church structure. It is contended, however, that the rule is that if the invalidity of the instrument is susceptible of proof at any time the question may be raised, the plaintiff has no standing to seek affirmatively to cancel the instrument claimed to constitute a cloud on title. (Citing *Washburn* v. *Burnham*, 63 N. Y. 132.) We may concede this to be a correct statement of the rule, but what are the facts? Here we have a restrictive covenant, valid upon its face, inserted in the deed. Its invalidity, or that it has become unenforceable, must be determined upon extrinsic evidence. As we have seen, the chief controverted question of fact was as to whether the defendant had retained an equitable interest in the premises by making a conveyance for less than its true value in consideration of the covenant. The determination of this question of fact depended upon the testimony of witnesses who knew of the transaction, or experts

who knew and could speak as to the value of the property at that time.  As we have seen, the understanding was that the premises were ultimately to be conveyed to the plaintiff corporation, with whom the defendant's committee had virtually negotiated the sale.  It, therefore, became a pertinent and important question of fact as to whether the rector and clerk had inserted the restrictive clause without the knowledge and consent of the plaintiff's officers, which fact could be determined only by extrinsic evidence which may be lost by the death of the then existing officers of the corporation.  It, therefore, follows that while the covenant, as it appears in the deed, is valid upon its face, the fact that it was inserted without a pecuniary consideration and without the knowledge and authority of the vestry, or of the plaintiff's officers who are deemed to be the equitable purchasers, can only be shown dehors the record by the oral testimony of witnesses then living.

The power of a court of equity may be difficult to define. It is co-extensive with the rights of persons to relief.  Pomeroy, in his Equity Jurisprudence (Vol. 1, sec. 170), says: "It is absolutely impossible to enumerate all the special kinds of relief which may be granted, or to place any bounds to the power of the courts in shaping the relief in accordance with the circumstances of particular cases.  As the nature and incidents of proprietary rights and interests, and of the circumstances attending them, and of the relations arising from them, are practically unlimited, so are the kinds and forms of specific relief applicable to these circumstances and relations." As applied to titles to real estate, and removing obstacles therefrom, it is the ordinary jurisdiction of a court of equity to perfect and complete the means by which the title, right, estate or interest of parties may be proved or secured, or to remove obstacles which hinder its enjoyment.  (*Sharon* v. *Tucker*, 144 U. S. 533.)

Chief Judge Cullen says: "The purpose for which actions to determine claims to real estate are authorized is to secure possession and quiet titles, for it is to the interest of the com-

munity that real estate shall be readily transferable and that the titles thereto shall be reasonably marketable." (*Seneca Nation of Indians* v. *Appleby*, 196 N. Y. 318, 323.)

And again, the court has power to order a bond or other instrument to be delivered up to be canceled, whether such instrument is or is not void at law, or whether it be void on the face of it, or by matter shown by the proofs in the cause; but the exercise of this power rests in the sound discretion of the court, and is regulated by the circumstances of each particular case.   (*Hamilton* v. *Cummings*, 1 Johns. Ch. 517.)

The provisions of our Code are equally broad.   Section 1638, after specifying the person who may bring an action to compel the determination of a claim upon real property, states that: " He may maintain an action against any other person to compel the determination of any claim adverse to that of the plaintiff which the defendant makes, or which it appears from the public records, or from the allegations of the complaint, the defendant might make to any estate in that property in fee, or for life, or for a term of years not less than ten, in possession, reversion or remainder, *or to any interest in that property*, including any claim in the nature of an easement therein, whether appurtenant to any other estate or lands or not, and also including any lien or incumbrance upon said property, of the amount of value of not less than two hundred and fifty dollars." Like language is also repeated in section 1639, specifying the allegations that may be made in the complaint.   (See, also, sections 1641 and 1642.)   It is true that the clause, " or from the allegations of the complaint," was inserted in the amendment of 1910, since this action was brought; but this is unimportant, for the clause which precedes it, " or which it appears from the public records," covers the question presented in this case, for the restrictive covenant does appear of record in the deed to which we have alluded.

In the case of *Brown* v. *Doherty* (185 N. Y. 383) an action was brought by the plaintiff claiming to be the owner in fee of real estate to determine the title and to bar the defendant from all claim thereto.   Gray, J., in considering

the case, held, with reference to the powers of the court, that the case was one in which equity could grant relief through the provisions of the Code to which we have referred.

We are aware that courts are inclined to proceed with great caution in administering equity. They want to be sure of their jurisdiction before exercising it and many cases are to be found in the books in which equitable relief has been denied. But where it is apparent that a cloud exists upon title, valid upon the face of the record, which is invalid or unenforceable through want of consideration or otherwise, and the invalidity or want of consideration can only be shown by oral testimony dehors the record, which evidence may be lost by the death of witnesses, our attention has been called to no meritorious case in which a court of equity has refused to entertain jurisdiction.

The judgment should be modified in accordance with the stipulation of the attorneys upon the argument, and as so modified the judgment should be affirmed, with costs.

Gray, J. (dissenting). I am constrained to dissent from the view taken by the majority of my brethren of the power of the court to administer the equitable relief demanded by, and awarded to, the plaintiff. The plaintiff seeks to be relieved from the obligation of a covenant, assumed in the deed conveying to it the property in question and running with the land, which restricted its use to "church purposes only." The question of the case is whether the plaintiff is entitled to equitable relief. As an appeal to the equity powers of the court, it is necessary that the case shall fall under some recognized head of equity jurisdiction. I know of no branch of that jurisdiction, which would comprehend such an action as this. It is asserted, however, that the power of a court of equity " is co-extensive with the rights of persons to relief" and that the provisions of our Code are broad enough for the case. The first assertion is true, only, in a case of equitable cognizance. When a person brings an equitable action, he must maintain it upon some equitable

ground.   However elastic and discretionary the exercise of the power to grant equitable relief, I do not believe that it can be properly invoked by a party to cancel a covenant in his grant.   I am not aware of any precedent and we are cited to none.   Though in matters of apparent equity, as fraud, or breach of trust, precedents are not necessary, it is dangerous to extend the authority of the court further than the practice of former times.   When Quintard, the plaintiff's warden, took title to the property for it, temporarily, he was not imposed upon, or deceived, with respect to the covenant. There is no charge of any fraudulent practices, or of mistake, in that respect.   The plaintiff is seeking, affirmatively, to annul, as a cloud upon its title, an agreement, which entered into the consideration for the conveyance, upon the ground that it was invalid, because unenforceable.   If the invalidity of the covenant can be established by extrinsic evidence, then the plaintiff can defeat any action brought to enforce it.   Can it be true that it is a cloud upon the title ?   There is no adverse claim to the property and whether the restrictive covenant be valid or invalid, in either case, how can it create a cloud upon title?   If invalid, the defect would, necessarily, appear in any proceeding by the defendant to enforce it.   I do not think that the fact that a defense exists to its enforcement is sufficient to warrant a resort to an equitable action.   ( *Washburn* v. *Burnham*, 63 N. Y. 132, 135 ; *Town of Venice* v. *Woodruff*, 62 id. 462, 467.)

Nor do I think that the action is maintainable within the provisions of section 1638 of the Code of Civil Procedure. That section provides, as the title of the article of the Code reads, for an " action to compel the determination of a claim to real property."   No such claim is made here adverse to that of the plaintiff and, however broadened in its provisions by amendment, the section, still, does not seem properly applicable to such a case.   It provides for actions "to compel the determination of any claim adverse to that of the plaintiff * * * to any estate in that property * * * or to any

interest * * * including any claim in the nature of an easement therein * * * and also including any lien or incumbrance upon said property, of the amount of value of not less than two hundred and fifty dollars." I am at a loss to perceive how this covenant of the plaintiff, to use the property for " church purposes only," comes within the description of any of the claims referred to by the Code.

VANN and WILLARD BARTLETT, JJ., concur with HAIGHT, J., and CULLEN, Ch. J., concurs in result; HISCOCK and COLLIN, JJ., concur with GRAY, J.

Judgment accordingly.