FLORENCE C. SATTERWHITE AND HUSBAND, PRESTON SATTERWHITE,
v. WILLIAM L. GALLAGHER.

(Filed 16 May, 1917.)

1. **Husband and Wife—Deeds and Conveyances—Contracts to Convey—Separate Examination.**

    A contract to convey lands of a married woman cannot be specifically
    enforced against her unless her privy examination has been taken to the
    instrument, though, on breach established, an action for damages may lie.

2. **Equity—Cloud on Title—Suits to Remove—Statutes.**

    Our statute has enlarged and broadened the old doctrine of permitting
    suit to remove a cloud upon title to lands, and affords the remedy wherever
    one owns or has an estate or interest in real property, whether he is in
    or out of possession, and another sets up a claim to an estate or interest
    therein which purports to affect adversely the estate or interest of the true
    owner, whether by way of claim of an enforcible parol trust, leases not
    required to be in writing, existent records or written instruments, that
    are reasonably calculated to burden and embarrass such owner in the
    full enjoyment or disposition of his property at a fair market value; the
    statute affording a remedy by disclaimer when the party does not in fact
    claim the "adverse interest" which is alleged to be a cloud on the title of
    the true owner. Revisal, sec. 1589; Public Laws 1903, ch. 763.

3. **Same—Husband and Wife—Separate Examination—Registration.**

    A contract to convey the lands of the wife, signed by her and her husband, but without having taken her privy examination, when recorded
    is a cloud upon her title to the lands and subject to her suit to remove
    the same, as such, within the intent and meaning of our statute, Revisal,
    sec. 1589; though she be and remain in possession of the land.

CLARK, C. J., dissents.

CIVIL ACTION, heard on demurrer before *Justice, J.,* at March Term, 1917, of RANDOLPH.

The action was instituted by *feme* plaintiff and her husband against defendant, and the complaint alleged in effect that she was the owner and in possession of 2,400 acres of land in Randolph County, N. C., known as Fairview Kennels; that she had entered into a contract to convey the same to defendant at the contract price of $180,000, in partial payments, and she and her husband had signed and delivered a written agreement to that effect, witnessed by one J. M. Millikan, and the defendant, asserting an interest in said property adverse to plaintiff's ownership, had caused said instrument to be proved by said witness and put on the registry of Randolph County, and that said *feme* plaintiff was then and is now a married woman, and her privy examination of said contract had never been taken as required by law, and, on the facts the contract in question constituted a cloud on her title or an adverse claim to her property within the meaning of our statutes controlling the matter.

The defendant, having first answered, asserting his rights under the contract and demanding damages for a breach thereof, was afterwards allowed to withdraw the said counterclaim without prejudice and enter a demurrer. There was judgment sustaining the demurrer and dismissing the suit on the ground that as specific performance of the contract could not be enforced no cause of action was stated; and plaintiff, having duly excepted, appealed.

*Brittain & Brittain for plaintiff.*
*Brooks, Sapp & Williams for defendant.*

HOKE, J., after stating the case: We have held, in *Warren v. Dail,* 170 N. C., 406, that under our constitution and statutes applicable a contract of this character could not be specifically enforced against a *feme* covert for lack of her privy examination, though, on breach established, she might be subjected to an action for damages, and the question is whether, under the conditions presented, the plaintiff, owner and in possession of the property, can proceed to have defendant's claim inquired into and determined under and by virtue of section 1589, Revisal, as an "adverse claim" within the intent and meaning of the law.

The old action to remove a cloud from title was an equity suit given the owner to enable him to relieve his property from an existent claim or encumbrance wrongfully set up against it when conditions were such that an action at law would not lie; and it was usually required that in order to maintain it the owner should be in possession or control of the property and that the claim in question should be apparently good, and requiring the presentation of evidence to upset it. Some of the

courts more than others seemed at times reluctant to permit the use of this remedy, or rather they were very insistent that the limitations they had placed upon it should be closely adhered to, and there were decisions on the subject, some of them in this jurisdiction, which, while they were probably in accord with precedent, were considered too restrictive on the rights of the owner in the use and enjoyment of his property, amounting at times to a denial of relief to which he was justly entitled. Referring to the unfortunate tendency of some of these rulings, Mr. Pomeroy, in his work on Equity Jurisprudence, makes comment as follows: "In the absence of statutes giving prima facie validity to deeds or other proceedings, the following doctrine seems to be sustained by the great majority of the American decisions: Where the instrument or proceeding constituting the alleged cloud is absolutely void on its face, so that no extrinsic evidence is necessary to show its invalidity, and where the instrument or proceeding is not thus void on its face, but the party claiming under it, in order to enforce it, must necessarily offer evidence which will inevitably show its invalidity and destroy its efficacy, in each of these cases the court will not exercise its jurisdiction either to restrain or to remove a cloud, for the assumed reason that there is no cloud. While this doctrine may be settled by the weight of authority, I must express the opinion that it often operates to produce a denial of justice. It leads to the strange scene, almost daily in the courts, of defendants urging that the instruments under which they claim are void, and, therefore, that they ought to be permitted to stand unmolested, and of judges deciding that the court cannot interfere because the deed or other instrument is void, while from a business point of view every intelligent person knows that the instrument is a serious injury to the plaintiff's title, greatly depreciating its market value, and the judge himself who repeats the rule would neither buy the property while thus affected nor loan a dollar upon its security." 3 Pomeroy, sec. 1399.

To prevent these untoward results and with a view of enlarging the scope of the remedy in proceedings of this character, the Legislature, in 1893, chapter 6, enacted a statute providing (sec. 1) that an action may be brought by any person against another who claims an interest in real property adverse to him, for the purpose of determining such adverse claims. Section 2: That if defendant in such action disclaim in his answer any interest or estate in the property or suffer judgment to be taken against him without answer, the plaintiff cannot recover costs," etc.

The remedy was further enlarged by chapter 763, Laws 1903, being extended to include the lien from docketed judgments, the entire law applicable being fully expressed in Pell's Revisal, sec. 1589.

Having reference to the broad and inclusive language of the statute, the mischief complained of and the purpose sought to be accomplished, we are of opinion that the law, as its terms clearly import, was designed and intended to afford a remedy wherever one owns or has an estate or interest in real property, whether he is in or out of possession, and another wrongfully sets up a claim to an estate or interest therein which purports to affect adversely the estate or interest of the true owner and which is reasonably calculated to burden and embarrass such owner in the full and proper enjoyment of his proprietary rights, including the right to dispose of the same at its fair market value. And it should and does extend to such adverse and wrongful claims, whether in writing or parol, whenever a claim by parol, if established, could create an interest or estate in the property, as in case of a parol trust or a lease not required to be in writing. And it should be allowed, too, when existent records or written instruments reasonably present such a claim, the statute preventing all hardship in such cases by its provision that if the holder does not insist on the same in his answer or does not answer at all, the plaintiff shall pay the costs.

The interpretation we have given is very clearly indicated, if it was not so expressly held, in *Rumbo v. Mfg. Co.,* 129 N. C., 9, where an action of this sort was sustained as against a wrongful claim, adverse to the true owner, the claim being made under a lease or written instrument which was void under our decisions. Referring to the change wrought by the statute, the present *Chief Justice,* delivering the opinion, said: "The defendant strenuously argued the equitable doctrines formerly applicable, but we need not discuss their application here, for this is not an equitable proceeding. It is an action given by statute. Laws 1893, ch. 6. It was because the General Assembly thought the equitable doctrines (as laid down in *Busbee v. Macey,* 85 N. C., 329, and *Busbee v. Lewis, ibid.,* 332, and like cases) inconvenient or unjust that the above act of 1893 was passed. If defendant had, as permitted under section 2 of said act, disclaimed any interest in the property, judgment could not have gone against him for costs. But having asserted his claim and lost, he cannot now plead the invalidity of his own claim as ground to dismiss the action."

Considering the record in view of the statute now controlling the matter and its proper construction, it is clear, we think, that the plaintiff is entitled to relief, it appearing that she is the owner and in possession of a valuable tract of land and defendant is asserting an invalid claim therein under a written instrument which has been put on the registry of the county and purports to create an interest in her property in his favor. It is a claim that would naturally arouse serious inquiry and is well calculated to hinder plaintiff in any effort to dis-

pose of her property at its real value. As a matter of fact, it does not appear on the face of the instrument that the plaintiff is a married woman, and under well considered decisions, both on the statute and under former decisions, plaintiff should have judgment relieving her property of such a claim. *Kinsman v. Spokane,* 20 Wash., 118; *Stoddard v. Burge,* 53 Cal., 394; *Johnston v. Cooper,* 10 Tenn., 524; *Waldron v. Harvey,* 54 W. Va., 609; *Rector and Church Wardens, St. Stephens, etc; Rector and Church Wardens, Church Transfiguration,* 201 N. Y., 1.

There is error, and this will be certified, that the demurrer be overruled and defendant allowed to answer over if so advised.

Reversed.

CLARK, C. J., dissenting: We held in *Warren v. Dail,* 170 N. C., 406, that a married woman can make any contract that she could make if unmarried, and make her property, real and personal, liable, without privy examination and without charging the same upon any specific property. If this were not so, then it would have been necessary to have held the "Martin" Act, Laws 1911, ch. 109, null and void, though in full conformity with the Constitution of 1868, which emancipated married women as to property rights, making them *sui juris* and providing that as to their property, whether owned by them at the time of marriage. or acquired thereafter in any manner, they should have as full control "as if they were unmarried," save only that the husband's assent is required as to conveyances. *Walker v. Long,* 109 N. C., 510.

This Court has always held that the husband's witnessing a conveyance made by his wife is a sufficient "assent," *Jennings v. Hinton,* 126 N. C., 48; or writing a letter, *Brinkley v. Ballance, ib.,* 393; or signing the deed without express assent, *Jones v. Craigmiles,* 114 N. C., 613, and many other cases. In the present case the husband fully concurred in the paper by signing it, and it having been recorded, the defendant is entitled to specific performance and the plaintiffs are not entitled to have such contract canceled as a cloud upon title.

The requirement of "privy examination" cannot be added to the constitutional provision which authorizes a married woman to convey subject (as said in the concurring opinion in *Warren v. Dail,* 170 N. C., at pp. 413-415) to only one restriction, "the written assent" of the husband, for no other clog or requirement can be added.

The privy examination was imposed at a time when married women had no such right, and was probably inadvertently brought forward in the codifications of the laws. Though copied in the "Martin" Act, it should be held subordinate to the change in the Constitution in regard to the freedom of married women to convey their own property

with merely "the written consent" of the husband. Hence the privy examination can be required only when the wife joins in the conveyance by the husband of his own property, by way of release of her contingent right of dower, which is given and can be taken away by the Legislature. Even in that case, it is useless, as the husband in fact selects the justice of the peace. Its retention, after its abolition in England and all our sister States (except four) is nothing more than a curious instance of mental inertia except to those who deem it little short of a standing insult to all husbands and wives, based upon the legal assumption thus made that husbands, in this State, will influence their wives by improper means, or cheat or bully them, and that wives by such means can be made to assent to conveyances unless protected by a magistrate selected by the husband.

The aggregate expense and annoyance of privy examinations, useless as they are, is no small consideration.

The Constitution requires privy examination of the wife only when she joins in the conveyance of the husband's "allotted" homestead, which is an implied abolition of it in all other cases: *Inclusio unius, exclusio alterius.*

The deed of a married woman, without privy examination, is color of title, *Perry v. Perry,* 99 N. C., 270. As, in this case, the husband joined in the contract to convey, it is a valid contract, and the court below, it seems to me, properly held that the plaintiffs had not stated a cause of action for cancellation.