GEORGE WILBUR BOYD AND WIFE PEARLINE W. BOYD v. JESSIE EDWARD WATTS

No. 8419DC718

(Filed 19 March 1985)

1. Vendor and Purchaser § 11— option contract—oral agreement to make payments for purchaser—subsequent acquisition of title—no preclusion to assert default provision

When plaintiffs became the öwners of legal title to property subject to a contract to purchase by defendant containing a provision allowing the sellers to take possession of the premises and to retain all previous payments as rent upon default in the payment of any installment, plaintiffs were not precluded from exercising their rights under the contractual default provision by their oral agreement, made before they acquired title, to make the monthly payments on defendant's behalf while their son lived on the property where defendant had notice of plaintiffs' intent to claim full title on the basis of default after plaintiffs' son moved from the property, and defendant thereafter made no monthly installment payments.

2. Vendor and Purchaser § 1.3— creation of option contract

An option contract was created by an agreement providing that the plaintiffs would sell property to defendant for a certain price, payable in monthly installments with one final payment of the balance due on 10 November 1984, and containing a default provision entitling plaintiffs to possession of the premises and to retain all previous payments as rent. On default, then, defendant retained the right to purchase by paying the unpaid balance plus contract interest at any time before 10 November 1984.

**3. Quieting Title § 1.1— action to quiet title against optionee—when permitted**

   An action against an optionee to quiet title will only lie during the contract period where plaintiffs assert some invalidity in the contract. Where plaintiffs premised their action to quiet title on the validity of the option contract and their right to take action on its literal terms, they were estopped to deny the validity of defendant's option, and directed verdict for plaintiffs on their action to quiet title was error.

**4. Vendor and Purchaser § 2.1— expiration of option pending appeal—erroneous judgment—remand for exercise of option within reasonable time**

   Where the trial court's judgment erroneously declared defendant's option contract to be forfeited and cancelled, and the time for defendant to exercise his option expired pending the appeal of that judgment and the appellate court's decision entered over a year after the judgment, the cause will be remanded for entry of an order allowing defendant a reasonable time of six months to exercise his option.

APPEAL by defendant from *Grant, Judge*. Judgment entered 6 March 1984 in ROWAN County District Court. Heard in the Court of Appeals 6 March 1985.

Plaintiffs, the Boyds, claiming a fee simple title in a house and lot through Dayvault Enterprises, Inc. and Harold L. Mills and wife, brought this action to quiet title against defendant Watts. (Defendant is the brother of plaintiff Pearline Boyd.) In December 1979, defendant entered into a contract with Dayvault for purchase of the property, where he had lived since 1974. The contract called for monthly payments of $75 toward the purchase price of $4,966.48. Payment of the outstanding balance plus interest was due 10 November 1984. In addition, defendant agreed to reimburse Dayvault for insurance and taxes. Dayvault held legal title pending full payment, while defendant retained full use of the premises. The agreement contained the following provision for default:

   DEFAULT: Upon default in the payment of any install-ment as set out herein, including pro-rated taxes and in-surance, and should said default remain for a period of thirty (30) days, then said Sellers [Dayvault] may take possession of the premises and expel the Buyers [defendant] therefrom. In such event, all payments made under the terms of this Con-tract shall be deemed rental payments and said Sellers shall retain all payments for the rent of said premises.

In May 1980, defendant left North Carolina for Florida, having made only three payments and without making arrangements to pay arrears. Another sister, Mary Barnhardt, made some payments. Plaintiffs' son moved into the house in October of 1980. Defendant contacted plaintiffs from Florida at some point and some arrangement was made for plaintiffs to make the payments. Plaintiffs paid the $75 monthly to Barnhardt, who paid Dayvault; plaintiffs also made up the arrearages owed Dayvault. Dayvault never acted on the default provisions.

In December 1980, Dayvault transferred its interest to the Mills, subject to the contract. Plaintiffs made two payments directly to the Mills, but then ceased payments. On 25 May 1981, the Mills sent a "Notice of Default" to defendant care of Barnhardt and care of his last known address in Florida, as well as posting a copy on the property. The notice stated that defendant had defaulted and that all payments would be deemed rent if arrears were not paid before 10 June 1981. No payment was made.

On 12 June 1981 the Mills executed a quitclaim deed to plaintiffs, accompanied by an assignment of all their rights under the contract, executed 22 June 1981. After defendant refused to sign a quitclaim deed in December 1982, plaintiffs brought the present action.

By complaint filed in March 1983, plaintiffs sued to quiet title, and for a declaration that defendant had forfeited his rights under the contract. Defendant answered and counterclaimed, alleging an oral agreement with plaintiffs, wherein plaintiffs agreed to make the payments due under the contract on defendant's behalf, and that, therefore, plaintiffs acquired title in bad faith, deliberately allowing the contract to go into default and thus fraudulently depriving him of his property. A jury trial ensued. At the close of all the evidence, the trial court granted plaintiffs' motions for directed verdict on both claims. Defendant appealed.

*William F. Rogers, Jr. for plaintiffs.*

*Larry E. Harris for defendant.*

WELLS, Judge.

Neither side challenges the validity of the contract; despite reservations, we therefore express no opinion thereon. *See* J. Narron, *Installment Land Contracts in North Carolina*, 3 Camp. L. Rev. 29 (1981). Nothing in the contract prevented Dayvault or the Mills from transferring their legal title to the property, and no irregularities are alleged or apparent in the title transfers. It is clear then that plaintiffs became the owners of the legal title to the property. The only questions presented therefore involved directed verdict on the contract claims. They are: (1) were plaintiffs precluded by their own fraud or bad faith from exercising their rights under the contractual default provision and (2) if not, what is the effect of defendant's default on plaintiffs' action to quiet title.

A directed verdict should be granted if, viewing the evidence in the light most favorable to the non-movant, the case presents only issues of law. *See Hong v. George Goodyear Co.*, 63 N.C. App. 741, 306 S.E. 2d 157 (1983). Ordinarily, a verdict should not be directed in favor of the party with the burden of proof. If, however, the evidence shows there is no genuine issue of material fact for the consideration of the jury, directed verdict for the party with the burden of proof is not improper. *Financial Corp. v. Harnett Transfer*, 51 N.C. App. 1, 275 S.E. 2d 243, *disc. rev. denied*, 302 N.C. 629, 280 S.E. 2d 441 (1981).

[1] Even assuming the existence of an oral agreement as alleged by defendant, there is no evidence that plaintiffs ever agreed to make monthly payments on his behalf other than as rent while their son lived in the house. The evidence is uncontroverted that the son moved out at the latest several months before Christmas 1982. Defendant admitted discussing title to the house with plaintiffs, and plaintiffs' claim of default, at Christmas 1982. The complaint was filed in March 1983. Defendant admitted at trial that he had not paid anything after March 1980, nor does anything in the record suggest that anyone made payments in his behalf after Christmas 1982. Defendant never tendered any such payments or arrears. Plaintiffs enjoyed control of the premises and did not need to expel defendant. Therefore, regardless of plaintiffs' intent when the contract went into default in June 1981, it is clear that defendant had adequate notice as of Christmas 1982 of plaintiffs'

intent to claim full title on the basis of default. Under the terms of the contract, then, it is abundantly clear that defendant defaulted after Christmas 1982 and plaintiffs properly deemed all payments rent as of the time of the filing of the complaint in March 1983.

It is settled law that a party to a contract who refuses to perform is not entitled to performance by the other party. *Peaseley v. Coke Co.*, 282 N.C. 585, 194 S.E. 2d 133 (1973); *McAden v. Craig*, 222 N.C. 497, 24 S.E. 2d 1 (1943); *Edgerton v. Taylor*, 184 N.C. 571, 115 S.E. 156 (1922); Restatement (Second) of Contracts § 237 (1981). In order to preserve his rights under the contract, the allegedly injured party must either render his promised performance or offer to do so. *Peaseley v. Coke Co., supra; McAden v. Craig, supra*; Restatement (Second) of Contracts § 238 (1981). A party cannot insist upon its contract rights in the abstract, while simultaneously neglecting entirely its duty to perform. Nothing in the record suggests that plaintiffs prevented defendant from performing. *Compare Goforth v. Jim Walter, Inc.*, 20 N.C. App. 79, 201 S.E. 2d 51 (1973) (plaintiffs prevented contractor from repairing house, could not complain of defects). Defendant has not demonstrated that tender of performance would be pointless or legally excused. *See Edgerton v. Taylor, supra.* On this record, we conclude that the court correctly granted directed verdict for plaintiffs. Our decision in *Thomas v. Ray*, 69 N.C. App. 412, 317 S.E. 2d 53 (1984), supports this result. There we upheld summary judgment for a defendant insurer, on the grounds that the insured failed entirely to protect the asserted contractual rights despite numerous opportunities to do so. The facts of the present case require a similar result; directed verdict for plaintiffs on the fraud claims was thus correctly granted. Defendant suffered no egregious loss thereby, since he personally paid only $225, plus whatever small amounts Mary Barnhardt paid on his behalf.

[2]   Having determined that the default provisions of the contract were properly exercised, we now must determine their effect. This involves interpretation of the contract. Plaintiffs have contended throughout that default extinguished all right and interest of defendant. It is unclear what interpretation defendant gave the default provision; he appears to contend he retained some interest in the property. Fortunately, the language of the contract is clear and therefore controlling. *Brown v. Scism*, 50

N.C. App. 619, 274 S.E. 2d 897, *disc. rev. denied,* 302 N.C. 396, 276 S.E. 2d 919 (1981). It must be enforced as written; this court may not disregard its plain meaning. *Catawba Athletics v. Newton Car Wash,* 53 N.C. App. 708, 281 S.E. 2d 676 (1981).

Under the contract, sellers (now plaintiffs, by assignment) agreed to sell to defendant for a certain price, payable in monthly installments with one final payment of the balance due 10 November 1984. The default provision merely entitled plaintiffs to possession of the premises and to retain all previous payments as rent. The contract does not provide for all other payments to become due on default, or for the contract to terminate or to be rescinded on default. On default, then, defendant retained the right to purchase by paying the unpaid balance plus contract interest at any time before 10 November 1984. This contractual relation is readily recognizable as an option contract. *Lawing v. Jaynes and Lawing v. McLean,* 285 N.C. 418, 206 S.E. 2d 162 (1974). The option remained exercisable at any time before 10 November 1984, and could not be revoked by plaintiffs. *Catawba Athletics v. Newton Car Wash, supra; see Trust Co. v. Frazelle,* 226 N.C. 724, 40 S.E. 2d 367 (1946).

If plaintiffs could not revoke the option, could they accomplish its extinction through an action to quiet title? Actions to quiet title are governed by N.C. Gen. Stat. § 41-10 (1984). This statute is remedial in nature, designed to provide a means for determining all adverse claims to land, including those formerly encompassed within the equitable proceedings to remove clouds on title. *York v. Newman,* 2 N.C. App. 484, 163 S.E. 2d 282 (1968). While we have not found any North Carolina authority directly on point, it appears that an option can constitute a cloud or adverse claim subject to an action to quiet title. *See Satterwhite v. Gallagher,* 173 N.C. 525, 92 S.E. 369 (1917) (contract to convey cloud); 65 Am. Jur. 2d *Quieting Title* § 10 (1972); 74 C.J.S. *Quieting Title* § 14b (1951); *Bixwood, Inc. v. Becker,* 181 Ind. App. 223, 391 N.E. 2d 646 (1979) (right to bring action to cancel option recognized).

It is no longer necessary for the plaintiff in a quiet title action to show as an independent proposition the invalidity and wrongfulness of the adverse claim. *Wells v. Clayton,* 236 N.C. 102, 72 S.E. 2d 16 (1952). Nevertheless, the fundamental purpose of the

statute is to extinguish wrongful claims, since an adverse claim is necessarily wrongful if it conflicts with the true title. *Id.; see Heath v. Turner*, 309 N.C. 483, 308 S.E. 2d 244 (1983) (means of proving title). An adverse claim must be presently determinable to be wrongful and hence actionable. *Vandiford v. Vandiford*, 241 N.C. 42, 84 S.E. 2d 278 (1954). An action to quiet title will not lie where the adverse claim is only speculative and potential. *Id.; see* 74 C.J.S. *Quieting Title* § 15 (1951). Pending the expiration of the option period, an option contract is merely a right to purchase which may or may not be exercised at the sole option of the optionee. *Lawing v. Jaynes and Lawing v. McLean, supra.* It is therefore not presently determinable by its terms.

[3] We therefore conclude, and the cases we have found support us, that an action against an optionee to quiet title will only lie during the contract period where plaintiffs assert some invalidity in the contract. *See Satterwhite v. Gallagher, supra* (lack of privy examination); *Fiebiger v. Fischer*, 276 N.W. 2d 241 (N.Dak. 1979) (unconscionability); *Rorem v. Sinclair Oil & Gas Co.*, 40 Okla. B.A.J. 1824 (1969) (oral contract); *Moon v. Phipps*, 67 Wash. 2d 948, 411 P. 2d 157 (1966) (breach of fiduciary duty). Only compelling circumstances not present here would justify relaxing this rule. *See Pigeon v. Hatheway*, 156 Conn. 175, 239 A. 2d 523 (1968) (need to settle claims against estate). Here, to the contrary, plaintiffs premised their action on the validity of the contract and their right to take action on its literal terms. Accordingly, they were estopped to deny the validity of defendant's option. *Lockleair v. Martin*, 245 N.C. 378, 96 S.E. 2d 24 (1957). Directed verdict for plaintiffs on their quiet title action was therefore clearly error.

[4] The judgment of the court, based on the erroneous directed verdict, reads that plaintiffs' title is quieted and the contract "is hereby declared forfeited and cancelled." The judgment must therefore be vacated. However, pending our decision, over a year after entry of judgment, the time for defendant to exercise his option has expired. Pending appeal, defendant had no rights under the contract since it had been judicially cancelled. Under the circumstances, it would be unjust simply to vacate the judgment, since defendant would be deprived of all relief even though he prevailed on this issue on appeal. Exercising our equitable power to make such orders as justice between the parties may require,

*Chamberlain v. Beam*, 63 N.C. App. 377, 304 S.E. 2d 770 (1983), we remand the cause for entry of an order allowing defendant a reasonable time to exercise his option. Judgment against defendant was entered 6 March 1984. Under the contract, plaintiffs' option to purchase expired 10 November 1984. We therefore hold that six months is a reasonable time to allow defendant to exercise his option. Should defendant fail to do so, final judgment shall be entered for plaintiffs.

The trial court's judgment dismissing defendant's counterclaim is affirmed. The trial court's judgment quieting title for plaintiffs is vacated. The cause is remanded for entry of further order or judgment consistent with this opinion.

The cost in this action shall be equally assessed between plaintiffs and defendant.

Affirmed in part; vacated and remanded in part.

Judges WHICHARD and BECTON concur.