THE SECOND REFORMED PROTESTANT (DUTCH) CHURCH OF THE TOWN OF FLATBUSH IN KINGS COUNTY, Appellant *v.* THE TRUSTEES OF THE REFORMED PROTESTANT DUTCH CHURCH OF THE TOWN OF FLATBUSH IN KINGS COUNTY, Respondent.

Second Department, April 1, 1927.

Religious corporations — conveyance of realty by defendant, parent corporation, to plaintiff, branch church — covenant by plaintiff, pursuant to contract of sale, to use premises only for religious purposes, is valid — approval of said covenant, pursuant to Religious Corporations Law, § 12, not required — covenant not ultra vires and is supported by sufficient consideration — covenant is personal.

The plaintiff, the incorporated German branch of the defendant Reformed Protestant Dutch Church of the town of Flatbush in Kings county, after occupying premises for forty-six years under a lease from the defendant, without payment of rent or taxes and depending upon the parent church for its continued existence, entered into a contract with the defendant for the purchase of the premises for one-half of their actual value. The contract provided that the plaintiff would enter into an agreement with the defendant in relation to what disposition should be made by the plaintiff of the proceeds of sale arising from the whole or any part of the premises in case the same should ever be sold by the plaintiff, which agreement was " expressly made a part of the consideration for said premises." In accordance with said contract an agreement was made which provided that the part of said premises which shall continue to be owned by the plaintiff " shall be used only for religious purposes of the Reformed Dutch Church denomination." It was also provided that if the property should be sold for a sum in excess of the purchase price, the excess should be used by the plaintiff in improving or repairing the buildings then on the property or in erecting new buildings, or for the purchase of other land and erection of buildings thereon which should be used only for religious purposes. It was further provided that if the property should be sold for a sum in excess of the purchase price and the excess was not used for religious purposes, then it would be paid to the defendant. Thereafter, the plaintiff sought to lease the premises for a substantial sum, the lessee to erect apartments and stores thereon, which, at the end of the term, would belong to the plaintiff. The proposed lessee refused to proceed with the lease because of the restrictions on the use of the property for other than religious purposes, and thereupon the plaintiff brought this action against the defendant to be relieved from said restriction.

The agreement restricting the use of the premises to religious purposes is a personal covenant, not running with the land, and is based upon a good consideration because it is expressly made a part of the consideration for the sale of the property in the contract of sale.

It cannot be said that said agreement or covenant is *ultra vires* as to either corporation; on the contrary, it carries out the object of their incorporation.

Although the approval of the court, under section 12 of the Religious Corporations Law, is necessary for a conveyance of the property of a religious corporation, such approval was not required so far as this covenant or agreement was concerned.

It is no argument against the validity of the restrictive covenant to say that the land without the restriction will be more valuable to the plaintiff.

APPEAL by the plaintiff, The Second Reformed Protestant (Dutch) Church of the Town of Flatbush in Kings County, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 2d day of July, 1926, upon the decision of the court rendered after a trial at the Kings Special Term, dismissing the complaint upon the merits.

*Robert H. Wilson,* for the appellant.

*Abel E. Blackmar* [*Henry D. Lott* with him on the brief], for the respondent.

KELLY, P. J. The defendant Reformed Protestant Dutch Church of the Town of Flatbush is one of the oldest religious corporations in the State. Its " Old Dutch Church " at the intersection of the former Flatbush turnpike road and the road leading to New Lots (now Flatbush and Church avenues), was a landmark in Revolutionary times, long before its original charter in 1784. It was incorporated under its present name in 1804. In 1875 certain of the church members, desiring to conduct their services in the German language, appealed to the church for assistance, and the defendant church, on January 1, 1875, executed a written lease to their German brethren of a plot of ground owned by the defendant, distant about a block east from the original church edifice, approximately 65 or 66 feet frontage on the north side of the New Lots road, by some 230 feet in depth. The " New Lots road," subsequently known as " Church Lane," is now Church avenue, and by the opening of Bedford avenue through Flatbush, the plot leased to the plaintiff, which is the incorporated German branch or mission church, is now located at the northwest corner of Church avenue and Bedford avenue, with a frontage of about 64 feet on Church avenue, running along the west side of Bedford avenue 231 feet to Martense street, with a frontage on the latter street of 61 feet 5½ inches. Great changes have taken place in

this locality, especially in the last fifteen or twenty years. It may be said to be now in the heart of the business development of Flatbush.

This lease, dated January 1, 1875, made by the defendant mother church to the plaintiff representing the German branch, was for twenty-one years from January 1, 1875, and the yearly rent to be paid to the mother church was the munificent sum of ten dollars a year, the tenant to pay the taxes and assessments on the demised premises. The lease contained a covenant against assigning or transferring it without the consent of the lessor, and the tenant stipulated " that in case the said premises shall be used for any other purposes than a Reformed Protestant Dutch Church then these presents shall cease and be at an end." It was also agreed that at the termination of the lease the tenants might remove any building or fence erected by them upon the demised premises, but not any building or fence upon the premises at the date of the lease. This lease also contained an agreement on the part of the defendant lessor: " And the said parties of the second part shall have the right to purchase said demised premises at any time during said term for the price or sum of Two Thousand Dollars."

Under this lease, the plaintiff erected a building on the north end of the demised premises, viz., what is now Martense street, and continued in possession until on or about June 1, 1921, a period of forty-six years. The plaintiff tenant did not exercise the option. In fact, it is conceded that the tenant never paid the $10 annual rent, neither did it pay the taxes and assessments, which were paid by the defendant owner to the extent of $8,000, and, in addition, the defendant advanced for the maintenance of the plaintiff church — call it an offshoot or mission of plaintiff's parent establishment, or what you will — the additional sum of $8,000. This was the situation in April, 1921, when the plaintiff and defendant entered into a contract for the sale of the property to the plaintiff for the sum of $20,000, viz., $5,000 cash and $15,000 purchase-money mortgage.

There appears to be no dispute that in April, 1921, at the date of the contract, the property was worth at least $40,000. The price, $20,000, referred to as " nominal " consideration, was reached by approximating the unpaid rent for forty-six years, the taxes and assessments on the property paid by the defendant during that period, and the additional money advanced to the plaintiff during that period. These facts and the relations of the two religious corporations are referred to by the respondent as explanatory of a somewhat unusual clause inserted in the contract for the sale of the property: " It is further understood and agreed by and

between the parties hereto that at the time of the delivery of the deed under this contract, the purchaser will enter into an agreement with the sellers in relation to what disposition will be made by the purchaser of the proceeds of sale arising from the whole or any part of said premises, in case the same shall ever be sold by the purchaser after taking title under this contract, which agreement is hereby expressly made a part of the consideration for said premises, and which said agreement shall be in a form approved by the sellers and shall be prepared by the counsel for the sellers." In accordance with this contract, at the time of the delivery of the full covenant warranty deed, an agreement was made between the parties, which is the subject of this action, a copy of which is annexed to the complaint. It provided: "*First.* That all that part of said premises· described in said deed which shall continue to be owned by the party of the first part shall be used only for religious purposes of the Reformed Dutch Church denomination." It also provided that if the property should be sold for a sum in excess of $20,000, the excess would be used by the plaintiff in improving, remodeling, altering or repairing the building then erected on the property, or in erecting new buildings, or for the purchase of land and erecting of buildings thereon in some other location in the borough of Brooklyn which should be used only for religious purposes; if the property should be sold for a sum in excess of $20,000 and the excess was not used for religious purposes, then it would be paid to the defendant herein, and that, in case the party of the first part (the plaintiff) ceased to exist as a religious corporation or to use the premises for any other than a religious purpose, it would sell the property in fee simple absolute to the defendant for the sum of $20,000.

This agreement was not recorded until November 25, 1924, some three and one-half years after its delivery. In 1924 a proposition was submitted to the plaintiff for the leasing of the Church avenue front of the premises for a period of twenty-one years; the lessee to erect apartments and stores upon the property, which at the end of the term would belong to the plaintiff, the lessee to pay to the plaintiff a net rental of $5,000 per annum for the first ten years, and a net rental of $5,500 per annum for the remaining eleven years. The proposed lessee refused to proceed with the lease because of the restriction on the use of the property for other than religious purposes so long as the plaintiff continued to be the owner, and the defendant refusing to consent to the lease the plaintiff brought this action in October, 1925, in which judgment is demanded that the agreement, hereinabove referred to, executed at the time of the delivery of the deed, be declared null and void,

and a cloud and incumbrance on plaintiff's title, and that it be canceled on the record. At the close of the trial the plaintiff asked that the prayer for relief be amended so as to ask that the agreement be amended so as to conform to the contract of sale, and the court granted the motion.

The only question presented on this appeal is the validity of the covenant contained in the agreement restricting the use of the premises to religious purposes. The counsel for appellant so states in his main brief and in the last point on his reply points he says: " This is all that the plaintiff asks, and the balance of the agreement, with reference to the disposition of the proceeds of the sale of this property, if it is ever sold, may stand."

The learned trial justice dismissed the complaint upon the merits, filing findings of fact and conclusions of law. He found as matter of law that the agreement restricting the use of the property while in the ownership of plaintiff was for the purpose of " securing the application of the land to religious purposes," and that it " is within the powers of both the plaintiff and defendant corporations." He found that the agreement was based upon a good and valuable consideration, and that it was part of the transaction of the conveyance of the land by the defendant to the plaintiff; that the consideration was " conclusively evidenced by the seals of the plaintiff and the defendant annexed thereto; " that the approval of the court was not necessary for the making of the agreement, and that it was a valid and enforcible contract between the parties.

The respondent appears in support of these propositions, but in addition the learned trial justice found as matter of law: " *Fourth.* That the Fourth clause of the contract, Exhibit 1 annexed to the complaint, imposes a condition subsequent to the grant and on the breach of the condition the devolution of the property to the grantor upon the payment of $20,000 was a common law possibility of reverter on re-entry for conditions broken."

I presume this conclusion of law is what counsel for respondent refers to when he says in his points: " Neither are we impressed with the ingenious theory of the trial justice. This theory does not rest on a proper construction of the agreement. It is not relevant to the issue and may be disregarded."

The learned trial justice filed an opinion in which he discusses the claims of the plaintiff, *first*, that the agreement was invalid because it was not authorized by the Supreme Court pursuant to Religious Corporations Law, section 12; *second*, that it was *ultra vires*, and *third*, that it was without consideration. (127 Misc. 498.) He decides that whereas approval of the court is necessary for a con-

veyance of the property of a religious corporation, such approval was not required so far as this agreement was concerned. If it became necessary under the agreement to reconvey the premises to the defendant, or to convey them to any purchaser, approval might then be asked, but no approval was required to cover the possibility that such happening might come to pass. In this I think the learned justice was right, and the respondent says the precise question has been decided in *Congregation Beth Elohim* v. *Central Presbyterian Church* (10 Abb. Pr. [N. S.] 484, City Court of Brooklyn, 1871, Neilson, J.); *Muck* v. *Hitchcock* (149 App. Div. 323, 4th Dept. 1912, McLennan, P. J.). The learned trial justice decides that the agreement was not *ultra vires* because, as he says, the parties are religious corporations and the agreement enables the plaintiff to carry on its religious work in accordance with the purposes for which it was formed. I do not see anything *ultra vires* in the agreement restricting the use of the premises to religious purposes. The learned judge then considers the objection of plaintiff that the contract is without consideration. He says: " It was executed simultaneously with the deed and contains a recital similar to the provisions in the contract of sale with reference to the disposition of the proceeds in case of a sale by the grantee (the plaintiff). It is apparent that the defendant, the grantor, intended that the property should at all times be used only by the Reformed Dutch Church denomination. The consideration for the sale, while for a substantial amount, was for a price much less than the market value of the property for commercial purposes. It is fair to assume, therefore, that the agreement was a partial consideration for the sale of the property. Besides, the making of the contract simultaneously with the deed evidences the fact that it merely reduced to writing a previous understanding between the parties for the sale of the premises. It would not, under such circumstances, be without consideration to support it. (13 C. J. 592; *Main St. & A. P. R. R. Co.* v. *Los Angeles Traction Co.*, 129 Cal. 301; *Westcott* v. *Mitchell*, 95 Maine, 377.) It is not suggested, neither is it in accordance with the common practice in such matters, that the parties or either of them, at the time the deed was delivered, contemplated the leasing of the premises for commercial purposes. The change in the real estate situation has made the property valuable and the plaintiff for reasons which are quite natural desires to increase its revenue, otherwise no complaint would have been made about the contract."

Counsel for respondent in discussing this question refers to the contract for the sale of the property, which expressly provided for an agreement in relation to the disposition to be made by the

plaintiff purchaser of the proceeds of sale of the whole or any part of the demised premises in case of sale by the purchaser, "which agreement is hereby expressly made a part of the consideration for said premises." Respondent says the agreement here attacked is in accordance with the provision recited in the contract. On the contrary, the appellant insists that the restriction in the use of the demised premises is not within the language of the contract of sale.

The appeal, in the last analysis, narrows down to this question: Is this restriction on the use of the property valid and binding?

In his opinion, Mr. Justice Callaghan says the plaintiff's counsel insists that the restrictive covenant in the agreement " was a conveyance of a reversionary interest in the property, or, in other words, that the agreement conveyed back to the defendant the fee to the premises upon the happening of a certain event, viz., the non-user of the premises by the Reformed Dutch Church denomination." The trial judge says this contention is unsound, as a reversion does not arise by conveyance but by operation of law; he defines the restrictive agreement as a " possibility of reverter," and, as we have seen, when he comes to formulate his conclusions of law, he held that this restrictive covenant was a " condition subsequent."

The appellant says it was not a condition in the deed, and even if it had been it was not a " condition subsequent," but a " mere ' covenant ' or ' agreement.' " As to this I am inclined to agree with the appellant, but I do not agree that it " vested in the defendant an interest in the plaintiff's property, to wit: an easement as a dominant estate to enforce this ' restrictive covenant ' covering the plaintiff's property."

The learned counsel for defendant, respondent, argues that the agreement is neither a " condition subsequent " nor an " easement " in the plaintiff's land (citing cases). He says it is a " personal covenant of the plaintiff." He says it is operative only while the plaintiff continues to own the land; that it does not purport to grant or convey any right, title or interest in the property to itself. It vests the defendant with no right to exercise any physical control over the property. He says: " It is obvious that this covenant does not run with the land." It is limited to the time the plaintiff shall own the property, and there is nothing in the agreement to prevent the plaintiff from selling the property and conveying it free from any restriction as to its use, its obligation arising as to disposition of the proceeds of the sale.

. What is this restrictive covenant? Suppose there was no prior contract of sale containing this reference to an " agreement "

to be made by the purchaser. Take the case of two property owners, holding their respective titles by full covenant warranty deed free from all restrictions. Is there anything to prevent these property owners, for legal consideration, from covenanting the one with the other that the property shall be used for this or that purpose, or that it shall not be used for some other purpose? If such agreement is made, is it an agreement " running with the land " in the absence of an express statement to that effect? I doubt it. It is an agreement binding on the parties so long as they shall continue to own the property.

In the case at bar the plaintiff can sell and convey the property at any time and without any restrictions. The covenants of the plaintiff as to its disposition of the moneys received upon such sale are set out in the 2d, 3d and 4th paragraphs of the agreement. In case only a portion of the property is sold, any excess over the $20,000 paid by the plaintiff to the defendant parent corporation shall be used in improving, remodeling or repairing the buildings on that portion of the property which is retained by the plaintiff. In case the excess over $20,000 shall not be used for the purpose specified, it shall be paid over to the defendant corporation. In case the whole of the demised premises are sold, the proceeds are to be used for the purchase of other land and the erection of buildings thereon in another location, which shall be used only for the same religious purposes as was the land sold. And in case the party of the first part shall cease to be a religious corporation, or shall cease to use the demised premises or any other premises purchased, for religious purposes of the Reformed Dutch Church denomination, in that event, upon payment to the defendant of the $20,000, the demised premises or any other premises substituted therefor shall be conveyed to the defendant parent corporation. This was the agreement relating to the disposition of proceeds of sale expressly referred to in the contract of sale to be entered into at the time of delivery of the deed, and which was " expressly made a part of the consideration for said premises." And, as already stated, the learned counsel for the plaintiff, appellant, says in his points, " the balance of the agreement, with reference to the disposition of the proceeds of the sale of this property, if it is ever sold, may stand."

In my opinion, the intention of the parties is clear. We have the history of the two religious corporations, the defendant parent corporation and the plaintiff, a separate religious corporation to be sure, but the child of the parent corporation, nurtured by it, using the demised premises for forty-six years as a mission or offshoot of the parent church, without payment of rent or taxes

and depending upon the parent church for its continued existence. When the plaintiff, in 1921, sought in a measure to emancipate itself from the parental control, and conduct its affairs without continuing to call on the parent church for its support and sustenance, the defendant was willing to further the wishes of the plaintiff. It agreed to convey the demised premises to the plaintiff for a money consideration representing less than half its market value at the time, and which only represented the actual cash outlay which the parent church had made during the preceding forty-six years, but upon the stipulations contained in the agreement concerning the use of the premises by plaintiff and the disposition of the proceeds of sale in case it should be sold in whole or in part, or in the event that the plaintiff should cease to exist as a religious corporation. These stipulations were " expressly made a part of the consideration for said premises." It seems to me there can be no doubt as to the intention of the parties, plaintiff and defendant. The disposition of the proceeds of sale, agreed to by plaintiff, and which counsel for appellant says he does not contest on this appeal, are, it seems to me, inconsistent with the use of the demised premises for other than religious purposes as long as title remains in the plaintiff. I think this agreement restricting the use of the demised premises to religious purposes, so limited, is a personal covenant, not running with the land, and based upon good consideration, because it is expressly made a part of the consideration for the sale of the property in the contract of sale. It cannot be said that it is *ultra vires* as to either corporation. On the contrary, it carries out the object of their incorporation.

I do not know that it is necessary to again refer to the other objections urged by plaintiff against the restrictive covenant. It did not need the approval of the court. The sale of the property was approved by the court upon a petition setting out the entire relationship of the parties. The defendant vendor expressly stated that the consideration of $20,000 was a " nominal consideration." It referred to the fact that the plaintiff had conducted religious services on the premises during the preceding forty-six years and stated that the petitioner, the defendant in the case at bar, was " satisfied that religious and charitable objects generally " would be conserved by the conveyance of the property to the plaintiff.

It is no argument against the restrictive covenant to say that the land without the restrictions will be more valuable to the plaintiff. That situation is frequently presented in the case of restrictive covenants, but if the parties agreed to the restriction of the property to religious uses for valuable consideration, it

should not be canceled simply because the plaintiff can better itself financially if the restriction is removed. The case of *St. Stephen's Church* v. *Church of Transfiguration* (201 N. Y. 1), cited by appellant, does not appear to apply to the case here presented.

In my opinion, the judgment should be affirmed, with costs.

MANNING, YOUNG, LAZANSKY and HAGARTY, JJ., concur.

Judgment unanimously affirmed, with costs.