GLENN I. HODGE AND IDA N. HODGE v. FIRST ATLANTIC CORPORATION

No. 7110SC123

(Filed 31 March 1971)

1. **Rules of Civil Procedure § 50— directed verdict for party having burden of proof**

   A directed verdict in favor of the party upon whom rests the burden of proof is proper only when there is no conflict in the evidence, or when all the material facts are admitted by the adverse party.

2. **Usury § 6— construction loans — sufficiency of evidence to show that defendant was the lender**

   In this action to recover the statutory penalty for usury allegedly paid on construction loans wherein defendant contended that it had merely acted as a broker for the actual lender, the evidence was sufficient to support a verdict finding that defendant was the lender in respect to the construction loans made to plaintiffs where it tended to show that plaintiffs believed defendant was the lender, that plaintiffs dealt only with defendant, that the promissory notes named defendant as payee and that the construction loan agreement referred to defendant as the lender. G.S. 24-2.

3. **Usury § 6— burden of proof**

   Upon the trial of an action to recover for usury, the burden of proof is on plaintiff throughout the trial to establish his cause of action.

4. **Usury § 1— elements of usury**

   The elements of usury are: (1) a loan or forbearance of money; (2) an understanding that the money loaned shall be returned; (3) payment or an agreement to pay a greater rate of interest than that allowed by law; and (4) a corrupt intent to take more than the legal rate for the use of the money loaned.

5. **Usury § 6— "service charge" or "construction loan fee" — failure to show services not rendered for fee**

   In this action to recover the statutory penalty for usury allegedly paid on construction loans, plaintiffs' evidence was insufficient to be

Hodge v. First Atlantic Corp.

submitted to the jury on the issue of whether a one percent "service charge" or "construction loan fee" was part of the interest charged on the construction loans and was received with corrupt intent, where it failed to show that defendant did not in fact render services for the one percent fee.

6. **Usury § 6 — "discount" or "points" on permanent loans — alleged usurious interest on construction loans — jury verdict in lender's favor**

In an action to recover the statutory penalty for usury allegedly paid on construction loans, the evidence fully supported the jury's verdict answering negatively an issue as to whether a "discount" or "points" received by defendant mortgage company from plaintiff subdivision developers in connection with permanent loans on homes built by plaintiffs constituted part of the interest charged on the construction loans and was received by defendant with corrupt intent.

APPEAL by plaintiffs and defendant from *Clark, J.,* 21 September 1970 Regular Civil Session, WAKE Superior Court.

This is a civil action wherein plaintiffs seek to recover pursuant to G.S. 24-2 the penalty for usurious interest allegedly paid by them to defendant or its predecessor, Goodyear Mortgage Corporation (Goodyear), in connection with certain construction loans which they contend were made to them by Goodyear. The transactions in question were between plaintiffs and Goodyear; defendant is a successor corporation to Goodyear, assuming all of Goodyear's rights and liabilities. The allegedly usurious charges were denominated a "service charge" or "construction loan fee" and certain "discounts."

Evidence for the plaintiff pertinent to this appeal is summarized as follows: In about 1963 a representative of Goodyear approached the male plaintiff (Hodge) and discussed with him the possibility that interest free loans could be made to Hodge for the construction of residential housing. Hodge had previously built individual homes for sale but had never developed an entire subdivision. Hodge located a tract of land that was acceptable to Goodyear and the parties entered into an oral agreement to develop it. Hodge acquired the land, had the streets constructed, water and sewer lines installed, and began constructing homes in the spring of 1964. Thereafter, on 4 October 1965 Hodge entered into a written construction loan agreement with Goodyear wherein he agreed to pay interest at the rate of 6% per annum on the loan balance outstanding, all taxes, assessments, and charges against the premises, a service charge of 1% of the total amount to be advanced under each construction loan, and the actual costs incurred in connection with the making of construction

loans. He and Mrs. Hodge also signed a series of promissory notes (secured by deeds of trust) in connection with the construction loans, the dates of which range from 25 August 1964 to 2 September 1965, and which named Goodyear as payee. Hodge paid for the insurance on the homes under construction, the title examination fees, service fees, a funding fee, premiums for builder's risk insurance and certain discounts. All of these amounts were either paid for by Hodge directly or subtracted from various advances of the construction loan money. During his business association with Goodyear Hodge dealt only with Goodyear officials and understood Goodyear to be the lender of the construction money.

Plaintiffs introduced a deposition of W. E. Woollen, an officer of Goodyear, wherein he referred to Goodyear as a mortgage banking firm and explained the workings of mortgage banking with respect to construction loans and permanent loans. Woollen listed the various fees Hodge incurred in the construction of the homes which list corresponded to those items given by plaintiffs, and explained the relationship of Goodyear to Southeastern Mortgage Investors Trust (Southeastern). According to his testimony, Southeastern supplied the money by which Goodyear made the construction loans to Hodge and Goodyear was broker for Southeastern. He testified that various services were rendered plaintiffs by Goodyear's representative, Willard Croom, including inspection of subdivisions, inspection of houses under construction, and handling modifications where needed. Woollen also described the paper work performed by Goodyear in originating loans, and particularly construction loans. He testified that the service charge or construction loan fee would not compensate for the services rendered in connection with a construction loan by Goodyear; that they lost money on construction loans, their ultimate objective being to get the permanent loans which would be sold to investors and would be serviced at a profit by Goodyear.

Evidence for the defendant is summarized as follows: One or more representatives of Goodyear furnished services to Hodge in a number of respects. After Hodge obtained the land these representatives helped prepare the papers necessary to submit to the Veterans Administration and the Federal Housing Administration to obtain their agreement to back the loans; they (Goodyear's employees) helped to coordinate the activities of the various subcontractors; they inspected the homes under

construction to make sure they were being built according to requirements. "Discounts" or "points" were described as being the difference between the amount of a permanent loan and the amount that an investor would pay for it, this being determined by the prevailing market rates and was also effected by the financial condition of the home purchaser. The discount was never received by Goodyear but accrued to the benefit of the ultimate purchaser of the permanent loan note and deed of trust. Woollen testified that to the best of his knowledge there was only one specific instance in which Hodge came into contact with a representative of Southeastern.

Issues were submitted to and answered by the jury as follows:

"1. Was the defendant the lender in respect to the construction loans made to plaintiffs, as alleged in the Complaint?

ANSWER: Yes.

2. Was the 'service charge' or 'construction loan fee' received from plaintiffs by defendant a part of the interest charged on said construction loans and received by defendant with corrupt intent?

ANSWER: Yes.

3. Was the 'discount' received from plaintiffs by defendant a part of the interest charged on said construction loans and received by defendant with corrupt intent?

ANSWER: No."

Upon the return of the verdict, plaintiffs moved to set aside the verdict as to the third issue which motion was denied. The court also denied plaintiffs' motion for a new trial on the third issue. The defendant, having made timely motions for directed verdict, moved for judgment n.o.v. and in the alternative for a new trial on the first and second issues. The court granted the defendant's motion for judgment n.o.v. and from judgment dismissing the action plaintiffs appealed. The court made a conditional ruling denying defendant's alternate motion for a new trial, and defendant appealed therefrom.

*John V. Hunter III for plaintiff appellants.*

*Fairley, Hamrick, Monteith & Cobb by James D. Monteith; Allen, Steed & Pullen by Thomas W. Steed, Jr.; and Jack T. Hamilton for defendant appellee.*

BRITT, Judge.

[1] Plaintiffs assign as error the failure of the trial court to grant their motion for a directed verdict on all issues. The burden of proof on each of the issues was on plaintiffs. A directed verdict in favor of the party upon whom rests the burden of proof is proper when there is no conflict in the evidence and all the evidence tends to support his right to relief, or when all material facts are admitted by the adverse party. *Chisholm v. Hall,* 255 N.C. 374, 121 S.E. 2d 726 (1961), *Smith v. Burleson,* 9 N.C. App. 611, 177 S.E. 2d 451 (1970). In the instant case, on no issue did all the evidence tend to support plaintiffs' right to relief, nor did defendant admit the facts as contended by plaintiffs. The assignment of error is overruled.

Plaintiffs assign as error the trial court's allowance of defendant's motion for judgment n.o.v. It will be noted that the jury answered the first and second issues in favor of plaintiffs and the third issue in favor of defendant, therefore, we will discuss each of the issues.

[2] We think the evidence was sufficient to support the verdict on the first issue. Among other things the evidence tended to show that plaintiffs believed that Goodyear was the lender of the construction money; plaintiffs dealt only with Goodyear, the promissory notes named Goodyear as payee and the construction loan agreement referred to Goodyear as the lender. While the jury verdict on the first issue is fully supported by the evidence, in order for plaintiffs to recover it is necessary that they prevail on at least one of the other issues.

[3-5] As to the second issue, we think the defendant's motion for directed verdict should have been allowed. Upon the trial of an action to recover for usury, the burden of proof is on the plaintiff throughout the trial to establish his cause of action. *Speas v. Bank,* 188 N.C. 524, 125 S.E. 398 (1924). The elements of usury are: (1) A loan or forbearance of money; (2) an understanding that the money loaned shall be returned; (3) payment or an agreement to pay *a greater rate of interest* than

---

Hodge v. First Atlantic Corp.

---

that allowed by law; and (4) a *corrupt intent* to take more than the legal rate for the use of the money loaned. *Henderson v. Finance Company,* 273 N.C. 253, 160 S.E. 2d 39 (1968), and cases therein cited. In the instant case, plaintiffs failed to show that defendant did not in fact render services for the one percent "service charge" or "construction loan fee."

[6]   As to the third issue, it is not necessary for us to determine if the trial court was warranted in submitting it to the jury. Suffice to say, the answer to the third issue in defendant's favor was fully supported by the evidence.

Inasmuch as plaintiffs failed to make out their case on the second issue, and the jury on sufficient evidence answered the third issue against plaintiffs, we hold that judgment n.o.v. in defendant's favor was proper and the assignment of error relating thereto is overruled.

Plaintiffs assign as error the ruling by the trial court that a portion of plaintiffs' claim was barred by the two-year Statute of Limitations, G.S. 1-53(2). Due to our holding that the judgment n.o.v. in defendant's favor was proper, we deem it unnecessary to discuss this assignment of error as we perceive no prejudice to plaintiffs.

We have carefully considered the other assignments of error brought forward and argued in the briefs but finding each of them without merit, they are all overruled.

For the reasons stated, the judgment appealed from is

Affirmed.

Judges CAMPBELL and HEDRICK concur.