PACCAR FINANCIAL CORP. v. HARNETT TRANSFER, INC., DONELL
GORDON GARRIS AND HARD TIMES TRANSFER, INC.

No. 8011SC613

(Filed 3 March 1981)

1. **Rules of Civil Procedure § 50– motion for directed verdict after mistrial**

    Where the trial court initially granted plaintiff's motion for directed
    verdict on the issue of right to possession of collateral given to secure a loan,
    the initial grant of the motion was withdrawn when the court subsequently
    submitted the issue to the jury, the jury followed the court's peremptory
    instruction to find in favor of plaintiff on the issue of possession but was
    unable to agree on all other issues submitted, and the trial court declared a
    mistrial, plaintiff's motion after the mistrial was declared for judgment in
    accordance with its motion for a directed verdict on its right to possession of
    the collateral was proper, since the motion was made when a motion for
    directed verdict had been denied and there was no verdict with final effect.
    G.S. 1A-1, Rule 50(b)(1).

2. **Rules of Civil Procedure § 50.2– directed verdict for party with burden of proof**

    A directed verdict for the party with the burden of proof is not improp-
    er where his right to recover does not depend on the credibility of his
    witnesses and the pleadings, evidence, and stipulations show that there is no
    issue of genuine fact for jury consideration.

3. **Mechanics' Liens § 2; Uniform Commercial Code § 45– collateral for loan – sale
    under mechanics' lien – purchaser's satisfaction of account for repairs – lend-
    er's security interest not extinguished**

    Where the purchaser of personal property which is subject to a valid,
    enforceable, perfected security interest buys in the collateral at a foreclo-
    sure sale conducted pursuant to G.S. 44A-1 et seq. to satisfy an account for

1

repairs which the purchaser has failed to pay for a purchase price which essentially represents payment of the account, the purchaser does not thereby extinguish the security interest. Rather, the security property or collateral remains subject to the security interest, and if the indebtedness for payment of which the collateral was pledged remains in default, the right to possession continues to be with the holder of the security interest. G.S. 25-9-503; G.S. 44A-2(d); G.S. 44A-6.

APPEAL by defendant Hard Times Transfer, Inc., from *Mills, Judge.* Judgment entered 25 January 1980 in Superior Court, HARNETT County. Heard in the Court of Appeals 14 January 1981.

Plaintiff filed a complaint on 16 January 1978 against defendants Harnett Transfer, Incorporated (hereinafter "Harnett Transfer") and Donell Gordon Garris (hereinafter "Garris") alleging the following: Garris executed a note agreeing to pay the sum of $21,000 to plaintiff's assignor, Peterbilt Southern, Incorporated. The indebtedness was secured by a security agreement which granted plaintiff's assignor a security interest in collateral described as a 1974 Kenworth (hereinafter "truck"). The instruments attached as exhibits to the complaint provided that failure to make timely payments on the note constituted a default, and that in the event of default plaintiff's assignor (and thus plaintiff by assignment) had the right to possess and sell the collateral. Garris had entered an agreement with Harnett Transfer for sale of the truck, and possession thereof had been delivered to Harnett Transfer, which had assumed responsibility for the payments. The note was in default, and plaintiff had demanded immediate payment of the balance, namely, $14,112.42 plus interest from 31 December 1977. Plaintiff sought judgment for the amount in default, attorney fees, claim and delivery of the collateral, foreclosure under the security agreement and sale of the collateral, and any deficiency that might remain after the sale.

Harnett Transfer answered, generally denying the allegations. It also counterclaimed for $12,638.56 allegedly due it for repair work performed on the truck. The answer was verified by George J. Hodges (hereinafter "Hodges"), President of Harnett Transfer. Plaintiff replied to the counterclaim alleging insufficient information as to the allegations and therefore denying them.

Garris answered denying the material allegations of the complaint and praying that the complaint be dismissed as to him.

On 5 October 1978 plaintiff obtained an order allowing it to amend its complaint to add Hard Times Transfer, Incorporated (hereinafter "Hard Times") as a party defendant. The amended complaint alleged that Garris had entered into a contract for sale of the truck with defendant(s) Harnett Transfer and/or Hard Times whereby possession of the truck had been transferred to defendant(s) Harnett Transfer and/or Hard Times, and that defendant(s) Harnett Transfer and/or Hard Times had assumed full obligation for payment of the indebtedness on the truck.

Hard Times answered alleging that plaintiff had not stated a claim upon which relief could be granted and generally denying plaintiff's material allegations. It also counterclaimed against plaintiff, alleging that Harnett Transfer had repaired the truck for a reasonable charge of $12,638.56; that the charges had not been paid; that as a consequence Harnett Transfer conducted a public sale of the vehicle pursuant to its lien rights under G.S. 44A-1 *et seq.;* that it purchased the vehicle at the sale for $12,638.56; and that it thereby became the legal owner of the vehicle, free and clear of any claim of the plaintiff. The answer was verified by Hodges, President of Hard Times. Plaintiff replied to the counterclaim alleging insufficient information as to the allegations and therefore denying them.

Prior to trial, plaintiff obtained (1) an order of seizure upon its application for claim and delivery against Garris and Harnett Transfer, and (2) a consent judgment ordering that plaintiff recover from Garris the sum of $15,112.42 plus interest from 31 December 1977. At the close of plaintiff's evidence, plaintiff entered a stipulation of dismissal as to Harnett Transfer, and Harnett Transfer entered a stipulation of dismissal as to its counterclaim against plaintiff. The matter proceeded against Hard Times as the sole defendant.

Hard Times' motion for directed verdict at the end of plaintiff's evidence was denied. The motion was renewed at the end of all the evidence and again was denied. Plaintiff's motion at the close of all the evidence to dismiss Hard Times' counterclaim was allowed, as was its motion for directed verdict against

Hard Times "on the grounds that the plaintiff had shown it [was] entitled to possession of the truck and that ... Hard Times ... had shown nothing to defeat plaintiff's rights."

The court submitted issues to the jury and peremptorily instructed that the first issue, whether plaintiff was entitled to possession of the truck, should be answered in the affirmative. The jury followed the instruction and answered the first issue in the affirmative. It was unable to agree on two of the remaining issues, and as a consequence the court declared a mistrial.

Subsequent to the declaration of mistrial, plaintiff moved pursuant to G.S. 1A-1, Rule 50(b), for judgment in accordance with its motion for a directed verdict on its right to immediate possession of the truck. The court granted the motion and entered judgment that plaintiff was entitled to immediate possession. Defendant was ordered to deliver the truck to plaintiff immediately.

From this judgment, defendant Hard Times appeals.

*Bryan, Jones and Johnson, by James M. Johnson, for plaintiff appellee.*

*L. Randolph Doffermyre III, for defendant appellant Hard Times Transfer, Incorporated.*

WHICHARD, Judge.

[1] The sole contention presented by defendant Hard Times is that the trial court erred in granting plaintiff's motion pursuant to G.S. 1A-1, Rule 50(b), for judgment in accordance with its motion for a directed verdict on plaintiff's right to immediate possession of the truck. Rule 50(b), in pertinent part, provides:

> Whenever a motion for directed verdict made at the close of all the evidence is denied or for any reason is not granted, the submission of the action to the jury shall be deemed to be subject to a later determination of the legal questions raised by the motion. ... [I]f a verdict was not returned [a party who has moved for a directed verdict], within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. ... [T]he motion shall be granted if it appears that the motion for directed verdict could properly have been granted.

G.S. 1A-1, Rule 50(b)(1). While the court here initially granted plaintiff's motion for directed verdict on the issue of right to possession, its subsequent submission of the issue to the jury had the effect of withdrawing the initial grant. Although the jury, pursuant to the court's peremptory instruction, answered the possession issue in favor of plaintiff, its inability to reach agreement on all other issues submitted resulted in a mistrial of the case and therefore in no verdict with final effect. Consequently, the Rule 50(b) motion was made when a motion for directed verdict had been denied and there was no verdict with final effect; and it thus was a proper motion.

[2] "A motion for directed verdict under Rule 50(a) of the North Carolina Rules of Civil Procedure ... present[s] the question whether the evidence was sufficient to entitle [the party against whom the motion is made] to have a jury pass on it." *Hunt v. Montgomery Ward and Company*, 49 N.C. App. 642, 644, 272 S.E. 2d 357, 359 (1980), and cases cited. The same question is presented by a motion under Rule 50(b)(1), made "within 10 days after the jury has been discharged," for judgment in accordance with the motion for a directed verdict. G.S. 1A-1, Rule 50(b)(1); *see, Odell v. Lipscomb*, 12 N.C. App. 318, 183 S.E. 2d 299 (1971). "Normally the motion for a directed verdict is made against the party who has the burden of proof." Shuford, N.C. Civil Practice and Procedure, § 50-6 at 411 (1975). "[T]he trial judge [cannot] direct a verdict in favor of the party having the burden of proof when his right to recover depends upon the credibility of his witnesses." *Cutts v. Casey*, 278 N.C. 390, 417, 180 S.E. 2d 297, 311 (1971). A directed verdict for the party with the burden of proof, however, is not improper where his right to recover does not depend on the credibility of his witnesses and the pleadings, evidence, and stipulations show that there is no issue of genuine fact for jury consideration. *Freeman v. Development Co.*, 25 N.C. App. 56, 212 S.E. 2d 190 (1975), *Hodge v. First Atlantic Corp.*, 10 N.C. App. 632, 179 S.E. 2d 855 *cert. denied* 278 N.C. 701, 181 S.E. 2d 602 (1971).

Applying these principles here, we find that the pleadings and evidence established the following uncontroverted facts:

Garris purchased the truck from plaintiff's assignor, Peterbilt Southern, Incorporated, and executed a note and security agreement to Peterbilt. The truck constituted the collateral

described in the security agreement. Peterbilt assigned the note and security agreement to plaintiff for a valuable consideration. Thereafter Garris "lease-purchased" the truck to Hard Times in exchange for a pickup truck. The written agreement between Garris and Hard Times did not specify that Hard Times was assuming the obligation to pay the installments as they came due under the note. Garris testified, however, that he "thought [he] was out of it"; Hodges, President of Hard Times, testified, "[W]e agreed ... to make the payments to [plaintiff] for [Garris]"; and Daniel S. Stacks, an employee of plaintiff, testified that he telephoned Hodges and Hodges told him "he was going to make the payments." Hard Times also agreed to pay for all *repairs*, maintenance, licenses, and costs of operation.

Hard Times in fact made four payments on the note. It then stopped making the payments. Hodges testified that the payments were stopped because the truck needed repairs, and Hard Times could not both make the monthly payments and pay for the repairs. Hodges and a representative of plaintiff negotiated regarding an extension of time to make the payments, but the extension was never approved. When a representative of plaintiff called Hodges to tell him the payments were past due and to threaten repossession, Hodges told him: "[Y]ou'll never get the truck back. I'll put a mechanic's lien on it for $12,000.00 and in North Carolina a mechanic's lien is superior to your security agreement."

Harnett Transfer performed the needed repairs on the truck and charged Hard Times the sum of $12,638.56 therefor. Hard Times did not pay the repair bill. On 27 February 1978, over a month after plaintiff filed this action against Garris and Harnett Transfer, "Harnett Transfer sold the truck at the courthouse door and Hard Times ... purchased the same for $12,758.56." Hard Times was subsequently joined as a party defendant in this action.

Hodges was a director, a stockholder, President and chief executive of both Harnett Transfer and Hard Times.

These facts are uncontroverted. They do not depend on the credibility of plaintiff's witnesses. The trial court thus properly granted plaintiff's motion for a directed verdict, even though plaintiff had the burden of proof, if under these uncontroverted facts plaintiff was entitled to possession of the truck as a matter

of law. Whether plaintiff was so entitled, then, becomes the sole issue now before us.

Article Nine, Uniform Commercial Code — Secured Transactions, contains the following provision:

> *Secured party's right to take possession after default.* — Unless otherwise agreed a secured party has on default the right to take the possession of the collateral.

G.S. 25-9-503. Proof of the following was required to establish that plaintiff had a valid and enforceable security interest in the truck: (1) that the debtor had signed a security agreement; (2) that the agreement contained a description of the collateral; (3) that value had been given for the agreement; and (4) that the debtor had rights in the collateral. G.S. 25-9-203. Plaintiff satisfied these requirements by introducing a signed security agreement between its assignor and Garris which described the collateral (the truck); showed that value had been given to the original creditor, its assignor; and showed that the debtor (Garris, and by virtue of the agreement with Garris, Hard Times) had rights in the collateral, namely, the right to possession and use so long as the note was not in default. Plaintiff also proved that it had given value to its assignor, the original creditor, by introducing the written assignment of the security agreement which showed that plaintiff had paid a valuable consideration for assignment of the original creditor's rights under the agreement. Plaintiff thus proved, by uncontroverted documentary evidence, its entitlement to a valid and enforceable security interest in the truck. Further, the agreement did not restrict the secured party's right to possession upon default. It thus did not fall within the "unless otherwise agreed" provision of G.S. 25-9-503. Finally, uncontroverted documentary evidence showed that the security interest had been perfected pursuant to the provisions of G.S. 25-9-302 (3)(b) and G.S. 20-58 *et seq.*

Plaintiff, then, held a valid, enforceable, perfected security interest in the truck. Hard Times therefore, upon its trade with Garris, took the truck subject to plaintiff's security interest. G.S. 25-9-301(1)(c); *see* 25-9-307 Official Comment.[1] By proving

---

[1]"After a financing statement has been filed or after compliance with the certificate of title law *all* subsequent buyers, under the rule of subsection (2), are subject to the security interest." G.S. 25-9-307 Official Comment (1965) (emphasis supplied).

with uncontroverted evidence (1) that it held a valid, enforceable, perfected security interest in the truck; (2) that Hard Times took the truck under the agreement between Hard Times and Garris subject to its security interest; and (3) that a default existed in payments on the indebtedness secured, plaintiff had established its right to take possession of the truck as a matter of law. G.S. 25-9-503.

In avoidance of plaintiff's right to possession pursuant to its security interest, Hard Times has pled, offered evidence of and argued a claim of superior right to possession by virtue of its purchase of the truck upon foreclosure of the lien held by Harnett Transfer. It relies upon the following provisions of Chapter 44A of the North Carolina General Statutes:

> Any person who *repairs,* services, tows or stores motor vehicles in the ordinary course of his business pursuant to an express or implied contract with an owner or legal possessor of the motor vehicle has a lien upon the motor vehicle for reasonable charges for such repairs, servicing, towing or storing. *This lien shall have priority over perfected and unperfected security interests.*

G.S. 44A-2(d) (1976) (emphasis supplied); and

> A purchaser for value at a properly conducted sale, and a purchaser for value without constructive notice of a defect in the sale who is not the lienor or an agent of the lienor, acquires title to the property *free of any interests over which the lienor was entitled to priority.*

G.S. 44A-6 (1976) (emphasis supplied). It asserts that Harnett Transfer, having repaired the truck which was the subject of plaintiff's security interest, was entitled to a lien which had priority, by virtue of G.S. 44A-2(d), over that security interest; and that because it was "a purchaser for value" at the foreclosure sale conducted to satisfy Harnett Transfer's lien, it acquired title "free of any interests over which the lienor [Harnett Transfer] was entitled to priority" and thus free of plaintiff's security interest, pursuant to G.S. 44A-6.

We find Hard Times' contention commendable for its creativity, but otherwise without merit. "Equity regards substance, not form, and is not bound by names parties give their transactions." *In re Will of Pendergrass,* 251 N.C. 737, 743, 112

S.E. 2d 562, 566 (1960); *see also, Erickson v. Starling*, 233 N.C. 539, 541-542, 64 S.E. 2d 832, 834 (1951). Hard Times' account for repairs with Harnett Transfer was in the sum of $12,638.56. At Harnett Transfer's foreclosure sale Hard Times purchased the repaired property, the truck in which plaintiff had a security interest, for the sum of $12,758.56. The purchase price at the foreclosure sale was thus $120.00 in excess of the account for repairs. While the record is silent regarding the reason for the difference, the $120.00 almost certainly represented the costs of the sale, perhaps combined with carrying or storage charges.

The substance of the transaction, then, is that Hard Times simply satisfied its account for repairs with Harnett Transfer. To allow Hard Times to avoid plaintiff's valid, enforceable, perfected security interest by simply satisfying its account for repairs, but doing so under the guise of a foreclosure sale pursuant to the repairing entity's statutory lien, would be to regard form over substance. Payment by Hard Times to Harnett Transfer one minute prior to the foreclosure sale clearly would not have given Hard Times title to the property free and clear of plaintiff's security interest. G.S. 44A-3 (1976).[2] Neither, in equity, should payment one minute later.

[3] We thus hold that when the purchaser of personal property which is subject to a valid, enforceable, perfected security interest buys in the collateral at a foreclosure sale conducted pursuant to G.S. 44A-1 *et seq.* to satisfy an account for repairs *which the purchaser has failed to pay*, for a purchase price which essentially represents payment of the account, the purchaser does not thereby extinguish the security interest. The security property or collateral remains subject to the security interest; and if the indebtedness for payment of which the collateral was pledged remains in default, the right to possession continues to be with the holder of the security interest. G.S. 25-9-503. Equity and rationality in our commercial law permit no other conclusion.

---

[2]This statute provides:
   Liens conferred under this Article ... terminate and become unenforceable when the lienor voluntarily relinquishes the possession of the property upon which a lien might be claimed, or when an owner, his agent, a legal possessor or any other person having a security or other interest in the property tenders *prior to sale* the amount secured by the lien plus reasonable storage, boarding and other expenses incurred by the lienor.
G.S. 44A-3 (1976) (emphasis supplied).

Harnett Transfer's lien for repairs was extinguished by Hard Times' payment of its account. Upon payment of the account the right to possess the collateral reverted to Hard Times, subject to plaintiff's right as secured party to possession upon Hard Times' default in payments on the indebtedness which the collateral was pledged to secure. Default in payments by Hard Times having been established by uncontroverted evidence, the trial court correctly granted plaintiff's Rule 50(b) motion and entered judgment that plaintiff was entitled to immediate possession; and its judgment is

Affirmed.

Judges WEBB and MARTIN (Harry C.) concur.