TYSON, Judge.
 

 *687
 
 Tater Patch Estates Home Owner's Association ("Plaintiff" or "the HOA") and Tammy Sutton ("Defendant") both appeal from judgment entered, following a jury trial and verdict, in favor of Plaintiff and against Defendant in the amount of $8,040.00, and in favor of Defendant on her counterclaim and against Plaintiff in the amount of $8,040.00. We find no error.
 

 I. Background
 

 Defendant purchased Lots 20, 25, and 28 within the Tater Patch Estates subdivision at an auction in November of 2000. All three lots were conveyed to Defendant within a single deed. Defendant additionally purchased Lot 2 within the Tater Patch Estates subdivision in August of 2001. Deeds for both of these purchases were recorded with the Haywood County Register of Deeds.
 

 *688
 
 Each deed conveying title to Defendant states the property is "subject to restrictions recorded in Deed Book 471 at Page 136, Haywood County Registry." The referenced restrictions are contained within the recorded Declaration of Covenants, Conditions and Restrictions ("Declaration"), which was executed by the developers of Tater Patch Estates. The Declaration requires lot owners to pay "a pro rata share of the maintenance of the subdivision roads based on the number of lots." The Declaration further provides for the formation of a homeowner's association after the developers have conveyed seventy-five
 
 *86
 
 percent of the lots located in the subdivision.
 

 The Declaration was recorded in 1999, prior to Defendant's purchases. Subsequent to the recording of the Declaration, but prior to Defendant's purchases, the developers recorded a plat, which divided the subdivision into individually numbered lots, including the lots referred to within Defendant's deeds.
 

 In June 2002, Defendant filed a Notice of Intent to Combine Parcels with the Haywood County Register of Deeds. This notice proposed to re-combine Lots 20, 25, and 28 into a single parcel.
 

 By 2007, the developers had conveyed seventy-five percent of the lots within Tater Patch Estates, which allowed for the formation of a homeowner's association pursuant to the terms of the Declaration. In April 2007, an entity claiming to be the Tater Patch Home Owner's Association sent 2007 billing statements to the lot owners for yearly fees and road maintenance assessments. The invoices were to be paid "ASAP or by June 15, 2007." Defendant was billed the yearly fee for each of her four lots, as well as separate road assessments for each of the lots, for a total of $3,200.00. At that time, no articles of incorporation were filed. No organizational meeting or election of officers and directors of the association had occurred, and Defendant's attorney asserted by letter to the purported HOA, that no one was "legally constituted to levy, collect or expend these funds." As a result, Defendant refused to pay the assessments for which she was billed at that time.
 

 Articles of Incorporation for Plaintiff, Tater Patch Estates Home Owner's Association, were filed with the North Carolina Secretary of State on 31 May 2007. The organizational meeting was held on 2 November 2007. Plaintiff thereafter maintained the roads within the subdivision and the gated entrance. In 2009, Plaintiff changed the lock on the entrance gate, and failed to provide Defendant with a key to open the locked gate until 2014.
 

 *689
 
 On 5 December 2012, Plaintiff sent to Defendant an invoice for assessments and yearly fees. This invoice billed the combined Lots 20, 25, and 28 as one lot. Defendant was billed for two assessments each year, from 2007 through 2012. One assessment was for the three combined lots, and another was for Lot 2. The invoice claimed Defendant owed $5,444.60. Defendant received another HOA invoice dated 6 February 2013, which showed she owed $5,924.60.
 

 Defendant did not pay any of the money invoiced for the assessments or fees. On 31 January 2013, Plaintiff filed suit in district court, and claimed Defendant owed $5,684.60. Plaintiff later amended the complaint to claim Defendant owed $10,889.20.
 

 In August 2013, after litigation had commenced, Plaintiff sent Defendant a letter, which stated Plaintiff had erroneously charged Defendant for two lots instead of four. The letter further stated Defendant's act of combining three of her lots, 20, 25, and 28, had no effect upon the amount she owed to the HOA for fees and assessments on all four lots. A corrected HOA invoice was enclosed, which asserted Defendant owed $15,209.20 for assessments on all four lots from 2007 through 2013.
 

 On 13 May 2014, Defendant filed a counterclaim. She alleged the grading and significant lowering of the elevation of Viewpoint Road by an adjoining lot owner with the approval of the HOA had "ruined access" to combined Lots 20, 25, and 28, and rendered access to that lot "practically impossible." Defendant alleged damages in excess of $10,000.00 for the de-valuation of those combined lots.
 

 Plaintiff's and Defendant's claims were submitted, adjudicated, and determined by a jury after a three day trial. Plaintiff moved for a directed verdict on its claim and Defendant's counterclaim, and renewed those motions at the close of all evidence. The jury awarded the sum of $8,040.00 in favor of Plaintiff, against Defendant, for the unpaid assessments and late fees. The verdict sheet specifically states the awarded assessments and late fees pertain to two lots. The jury also awarded an identical amount, $8,040.00, in favor of Defendant, against Plaintiff, for damages arising out of Defendant's counterclaim concerning the road and access. The trial court entered judgment in accordance
 
 *87
 
 with the jury's verdicts and awards. Both parties appeal.
 

 II. Jurisdiction
 

 The parties' appeals from the district court's final judgment are properly before this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2015).
 

 *690
 

 III. Issues
 

 Plaintiff argues the trial court erred by: (1) denying Plaintiff's motion for a directed verdict on its claim for assessments; (2) denying Plaintiff's motion for a directed verdict on Defendant's counterclaim; (3) admitting into evidence a copy of the sales contract between Defendant and the developers of Tater Patch Estates, and (4) allowing Defendant and two others to testify concerning the announcements at auction and what information they were told at the time Defendant purchased the three lots.
 

 On cross-appeal, Defendant argues the trial court erred by instructing the jury: (1) the law does not require Lot 2 to be adjacent to a subdivision road for Defendant to be liable for road maintenance assessments by the HOA on that lot; and (2) lot purchasers have a right to presume they would pay a certain proportion of the common expenses as shown by the plat, and to presume the owners of every other lot on the plat will pay an equal sum pursuant to the plan of road maintenance contained in the covenants.
 

 IV. Plaintiff's Motions for Directed Verdict
 

 A. Standard of Review
 

 Our Supreme Court has set forth the standard we review the trial court's rulings on motions for a directed verdict and judgment notwithstanding the verdict.
 

 The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury. When determining the correctness of the denial for directed verdict or judgment notwithstanding the verdict, the question is whether there is sufficient evidence to sustain a jury verdict in the non-moving party's favor, or to present a question for the jury. Where the motion for judgment notwithstanding the verdict is a motion that judgment be entered in accordance with the movant's earlier motion for directed verdict, this Court has required the use of the same standard of sufficiency of evidence in reviewing both motions.
 

 Davis v. Dennis Lilly Co.
 
 ,
 
 330 N.C. 314
 
 , 322-23,
 
 411 S.E.2d 133
 
 , 138 (1991) (internal citations omitted).
 

 *691
 

 B. Motion for Directed Verdict on Plaintiff's Claim for Assessments
 

 Plaintiff argues the trial court erred by denying Plaintiff's motion for directed verdict on the issue of Defendant's obligation to pay assessments. We disagree.
 

 Plaintiff asserts the covenants contained in the Declaration attached to all four of Defendant's lots, and argues Defendant's act of combining three of the four lots did not reduce her per lot assessment obligations. Plaintiff moved for directed verdict on its claim for assessments from 2008 through 2014. Plaintiff withdrew its claim for assessments for the year 2007, and stipulated the issue of late fees was appropriate for the jury to determine. The jury specifically determined Plaintiff is entitled to recover assessments from Defendant for two lots only, from January 2008 through January 2016, and awarded Plaintiff a total of $5,400.00. The balance of the jury's $8,040.00 award to the HOA was for late fees.
 

 The parties do not contest Plaintiff's right to assess lot owners under the Declaration. Defendant argues that, by re-combing Lots 20, 25, and 28, she reduced her obligation to one lot under the Declaration. Plaintiff claims Defendant owes assessments for four lots, instead of two. Plaintiff asserts its motion for directed verdict on its claim for assessments was limited to the principal amount of Defendant's debt. As Defendant admittedly never paid any assessments, Plaintiff asserts the only issue for the court to determine on the motion for directed verdict was the proper amount for Plaintiff to have assessed Defendant for the years 2008 through 2016.
 

 Regardless of Defendant's obligation to pay assessments on all four lots, sufficient
 
 *88
 
 evidence was introduced to present a question for the jury and to sustain the jury's verdict on this issue.
 

 Id.
 

 Plaintiff had the burden of proving the amount of its claims for assessments and any late charges due against Defendant. "A directed verdict in favor of the party upon whom rests the burden of proof is proper when there is
 
 no conflict
 
 in the evidence and
 
 all
 
 the evidence tends to support his right to relief, or when all material facts are admitted by the adverse party."
 
 Hodge v. First Atlantic Corp.
 
 ,
 
 10 N.C.App. 632
 
 , 636,
 
 179 S.E.2d 855
 
 , 857 (1971) (citing
 
 Chisholm v. Hall
 
 ,
 
 255 N.C. 374
 
 ,
 
 121 S.E.2d 726
 
 (1961),
 
 Smith v. Burleson
 
 ,
 
 9 N.C.App. 611
 
 ,
 
 177 S.E.2d 451
 
 (1970) ) (emphasis supplied).
 

 Plaintiff's amended complaint claimed Defendant owed the sum of $10,889.20, as of 11 January 2013. In August of 2013, Defendant was invoiced the amount of $15,209.20. At the time of trial in January 2016, Plaintiff claimed Defendant owed the HOA a total of $20,729.20. It was
 
 *692
 
 appropriate for the jury to determine the total amount of Defendant's indebtedness from the evidence presented. The trial court did not err by denying Plaintiff's motion for directed verdict.
 

 C. Motion for Directed Verdict on Defendant's Counterclaim
 

 Plaintiff also argues the trial court erred by denying Plaintiff's motion for a directed verdict on Defendant's counterclaim. We disagree.
 

 Defendant filed a counterclaim against Plaintiff for damage allegedly done to her property by the grading and lowering of Viewpoint Road. Defendant's counterclaim alleged the owner of Lot 1, located across Viewpoint Road from Defendant's combined Lots 20, 25, and 28, graded and lowered the elevation of Viewpoint Road approximately fifteen feet in conjunction with construction performed on Lot 1. Defendant alleged Plaintiff was responsible for damage done to her property, where the lowering and grading of the road was done with the "consent and approval of Plaintiff."
 

 The Declaration requires plans for construction to be approved in writing by the developers. Plaintiff asserts the Declaration is silent on whether Plaintiff became vested with the right to approve construction plans when the developers relinquished control. At trial, Defendant offered into evidence the minutes of the 6 August 2011 HOA meeting, wherein Plaintiff continued to require a site plan to review prior to the commencement of construction of any house. No evidence of a site plan showing the proposed grading and finished elevation of Viewpoint Road was presented at trial.
 

 Defendant testified that the lowering of Viewpoint Road "left [her lots] high up on the bank," about fifteen to twenty feet. She testified the road construction left her without a "way to build an easy driveway in there now." Prior to the construction, Plaintiff was able to drive directly onto her lots from Viewpoint Road. She was unable to do so after the lowering of the road due to the significant embankment and new road elevation. She testified Plaintiff never contacted her about the road construction.
 

 Defendant argues "[f]rom this evidence, a jury could find [Plaintiff] owed a duty to [Defendant] to maintain the subdivision roads and prevent damage to them and that [Plaintiff] breached that duty by failing to protect Viewpoint Road." Plaintiff argues Defendant failed to present any evidence to show who altered the road or Defendant's property, and that Plaintiff has no affirmative duty to Defendant to ensure property owners do not cause damage to roadways within the subdivision.
 

 *693
 
 Under the specific facts of this case, the trial court did not err by submitting Defendant's counterclaim to the jury. Defendant presented photographs of the steep and obvious embankment created by the lowering of the elevation of the road. A question of fact was presented of whether Plaintiff was aware or approved of the grading of the road and the obvious alteration it caused to Defendant's lots.
 

 Furthermore, evidence was also presented to show the HOA had changed the lock on the entrance gate in 2009, and did not provide Defendant with a key until 2014, because she had failed to pay her assessments.
 
 See
 
 N.C. Gen. Stat. § 47F-3-102(11) (2015) (stating a HOA is prohibited from denying a
 
 *89
 
 lot owner access to their property for failure to pay assessments). Evidence was presented to allow the jury to determine Defendant was prevented access to her property, and unaware of the construction and lowering of the elevation of the road, to the detriment of her property. This argument is overruled.
 

 V. Evidentiary Issues
 

 Plaintiff argues the trial court erred by allowing Defendant and two of Defendant's witnesses to testify they were told at auction, upon purchase of the three lots, that the lots could be re-combined and Defendant would only be liable for one assessment. Plaintiff argues statements made by the auctioneer are irrelevant, because all prior contracts and negotiations were merged into the deed conveying the lots to Defendant, and the testimony is inadmissible hearsay.
 
 See
 

 Opsahl v. Pinehurst, Inc.
 
 ,
 
 81 N.C.App. 56
 
 , 66-67,
 
 344 S.E.2d 68
 
 , 75 (1986).
 

 Plaintiff also argues the trial court erred by allowing into evidence a land sales contract between Defendant and the seller of Lots 20, 25, and 28, which stated the property was "Sold subject to announcements made from auction stand and all existing rights-of-way and easements." Plaintiff argues the contract was irrelevant, because the land contract was merged into the deed once the deed was executed, making its terms unenforceable and meaningless.
 

 "The burden is on the party who asserts that evidence was improperly admitted to show both error and that he was prejudiced by its admission."
 
 State v. Gappins
 
 ,
 
 320 N.C. 64
 
 , 68,
 
 357 S.E.2d 654
 
 , 657 (1987).
 

 Our Court has held:
 

 Verdicts and judgments are not to be set aside for mere error and no more. To accomplish this result it must be made to appear not only that the ruling complained of is erroneous, but also that it is material and prejudicial, and
 
 *694
 
 that a different result likely would have ensued, with the burden being on the appellant to show this. ... Presuming error, [the appellant] has not shown prejudice and we will not speculate whether such error was prejudicial.
 

 Boykin v. Morrison
 
 ,
 
 148 N.C.App. 98
 
 , 102,
 
 557 S.E.2d 583
 
 , 585 (2001) (citation and quotation marks omitted).
 

 Under the specific facts presented in this case, Plaintiff has failed to show the likelihood a different result would have been reached, but for the admission of this evidence.
 

 Id.
 

 The jury's verdict sheet shows Defendant owed assessments specifically for two lots for January 2008 through January 2016, but it does not state which of Defendant's specific lots. The Declaration was offered into evidence, which specifically states lots can be re-combined. Plaintiff also publicly filed documentation to re-combine her lots. Also, for seven years Plaintiff invoiced Defendant for assessments for only two lots, and did not invoice her for four lots until after litigation had commenced. Furthermore, the land sales contract clearly states the purchaser "is not relying on any information provided by J.L. Todd Auction Company in regard to said property." Presuming,
 
 arguendo
 
 , evidence of the statements made at auction and the land sales contract were improperly admitted into evidence, Plaintiff has failed to show a likelihood the jury would have reached a different result without this evidence to establish prejudice.
 

 VI. Jury Instructions
 

 Defendant argues the trial court erred by instructing the jury contrary to law. We disagree.
 

 A. Standard of Review
 

 On appeal, this Court considers a jury charge contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed[.] The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.
 

 *90
 

 Hammel v. USF Dugan, Inc.
 
 ,
 
 178 N.C.App. 344
 
 , 347,
 
 631 S.E.2d 174
 
 , 177 (2006) (internal citations and quotation marks omitted).
 

 *695
 

 B. Obligation to Pay Assessments on Lot Not Adjacent to Subdivision Roads
 

 Defendant argues the trial court erred by instructing the jury "the law does not require that the Defendant's property be adjacent to a subdivision road in order for the defendant to be liable for assessments for road maintenance or other common expenses." We disagree.
 

 The uncontroverted evidence shows Defendant's Lot 2 is part of the subdivision, but does not have access to a road located within the subdivision and maintained by the HOA. Defendant argues she should not be required to pay for road maintenance for Lot 2, because this lot is accessed by a public road located outside of the subdivision.
 

 "The essential requirements for a real covenant are: '(1) the intent of the parties as can be determined from the instruments of record; (2) the covenant must be so closely connected with the real property that it touches and concerns the land; and, (3) there must be privity of estate between the parties to the covenant.' "
 
 Four Seasons Homeowners Assoc. v. Sellers
 
 ,
 
 62 N.C.App. 205
 
 , 210,
 
 302 S.E.2d 848
 
 , 852 (1983) (quoting
 
 Raintree Corp. v. Rowe
 
 ,
 
 38 N.C.App. 664
 
 , 669,
 
 248 S.E.2d 904
 
 , 908 (1978) ).
 

 In
 
 Sellers
 
 , this Court rejected the property owners' argument that a covenant allowing the collection of assessments to finance the community recreational facilities did not run with the land, because the lot owners' property was located several blocks away from the recreational facilities.
 

 Id.
 

 The Court held the covenant "runs with each lot in the entire subdivision of which defendants' lots are but a small part."
 

 Id.
 

 Defendant's reliance upon N.C. Gen. Stat. § 47F-3-115(c)(1) (2015) is misplaced. That statute provides:
 

 (c) To the extent required by the declaration:
 

 (1) Any common expense associated with the maintenance, repair, or replacement of a limited common element shall be assessed against the lots to which that limited common element is assigned, equally, or in any other proportion that the declaration provides.
 

 Id.
 

 A "limited common element" is defined as "a portion of the common elements
 
 allocated by the declaration or by operation of law
 
 for the exclusive use of one or more but fewer than all of the lots." N.C. Gen. Stat. § 47F-1-103(18) (2015) (emphasis supplied).
 

 *696
 
 The Declaration unambiguously states, "[e]ach lot owner shall pay a pro rata share of the maintenance of the subdivision roads based on the number of lots." The Declaration does not allocate the roads, fronting on some lots but not others, for exclusive use by a subset of lots. The maintenance of the subdivision roads is the responsibility of all subdivision lot owners, and the right to use and maintain them is not limited to a particular group or specific lots. The Declaration clearly indicates the intent of the developers to require all lot owners to pay a pro rata share of the road maintenance. The subdivision roads are not limited common areas, and the trial court's instruction was proper. Defendant's assertion is without merit and is overruled.
 

 C. Instruction Regarding Assumption of Lot Purchasers
 

 Defendant also argues the trial court erred by instructing the jury that "purchasers of lots from plats as filed have a right to assume they would pay a certain proportion of the common expenses as shown by the plat and to assume that the owners of each and every other ... lot on the plat will pay an equal sum pursuant to the plan of road maintenance as contained on the restricted covenants."
 

 Defendant has failed to show any prejudice by this instruction. As noted, Defendant was obligated to pay assessments for Lot 2. Presuming,
 
 arguendo
 
 , the act of combining Lots 20, 25, and 28 caused her to owe only one other lot assessment, she remained obligated for assessments on two lots. The jury specifically found Defendant owed assessments on two lots. Defendant has failed to show prejudice. This argument is overruled.
 

 *91
 

 VII. Conclusion
 

 The trial court properly denied Plaintiff's motions for directed verdict on Plaintiff's claim for assessments and Defendant's counterclaim. Plaintiff failed to show prejudice by the trial court's admission into evidence of a copy of the sales contract between Defendant and the developers of Tater Patch Estates, or by allowing Defendant and two others to testify concerning the announcements at auction and what they were told at the time Defendant bought Lots 20, 25, and 28.
 

 Defendant failed to show error or prejudice in the trial court's instruction to the jury. Both parties received a fair trial, free from errors and prejudice they preserved and argued.
 
 It is so ordered
 
 .
 

 NO ERROR.
 

 Judges MCCULLOUGH and DILLON concur.